655 A.2d 549

James I. AMMON, as assignee of Kurt R. Schussler
and Kurt R. Schussler, in his own right

v.

Stephen P. McCLOSKEY, Esquire, Phillips and
Faldowski and Erie Insurance Group.

Appeal of Stephen P. McCLOSKEY,
Esquire, Phillips and Faldowski.

James I. AMMON, as assignee of Kurt R. Schussler
and Kurt R. Schussler, in his own right

v.

Stephen P. McCLOSKEY, Esquire, Phillips and
Faldowski and Erie Insurance Group.

Appeal of James I. AMMON as assignee of Kurt R. Schussler.

Superior Court of Pennsylvania.

Argued Sept. 29, 1994.

Filed Jan. 10, 1995.

Reargument Denied March 21, 1995.

Vincent J. Grogan, Pittsburgh, for Stephen P. McCloskey, Phillips and Faldowski.

Mark F. McKenna, Pittsburgh, for James I. Ammon.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

WIEAND, Judge:

This is a complex action for legal malpractice in which the trial court, following trial without jury, found that defense counsel in the underlying, prior action had been negligent by waiving a defense of release. As a result of this negligence, a judgment in the amount of $222,000.60 had been entered against the client. Therefore, the court in the malpractice action returned a verdict in the amount of $222,000.60 in favor of the client's assignee, who had been the plaintiff in the underlying action. On appeal, after post-trial motions were denied, the lawyer-defendant argues that (1) the plaintiff-assignee failed to prove that the defendant-client and assignor in the underlying action had sustained any economic loss as a result of his alleged negligence; and (2) the trial court erred in ruling that principles of collateral estoppel prevented the lawyer-defendant from challenging a statement by the trial court in the underlying action that counsel had failed to raise the existence of the release. Our consideration of these and other issues raised by the parties via cross-appeals requires

that we unravel the complicated and complex history of this litigation, which seems to have acquired a life of its own.

On April 18, 1980, Kurt Schussler and James Ammon were involved in an automobile accident in Washington County. The vehicle being driven by Schussler, in which Ammon was a passenger, collided with a vehicle owned by Mobay Chemical Corp. and parked at Arnold Pontiac. On May 22, 1981, Ammon and his parents settled their claims against Schussler for $14,000.00 and executed a release which discharged Schussler, his father, and Erie Insurance Exchange, the liability carrier for the Schussler vehicle.

On July 17, 1982, Ammon filed a complaint against Mobay Chemical and Arnold Pontiac.[1] In that action, Schussler was subsequently joined as an additional defendant. Schussler was then represented by the law firm of Phillips and Faldowski, who assigned responsibility for the case to Stephen P. McCloskey, Esquire. An answer was filed on behalf of Schussler in which all liability was denied and to which was attached a copy of the release which Ammon had executed in favor of Schussler.

Prior to trial of the underlying action in February, 1984, an in-chambers settlement conference was held by the trial judge and counsel for the several parties. At that time, according to McCloskey, the Ammon release of Schussler was discussed, and it was decided that it would not be introduced during trial but would be given effect after a verdict had been returned. No record was made of this discussion.

The release, therefore, was not introduced as evidence during the trial, and the jury returned a verdict in favor of Ammon and against Schussler and Arnold Pontiac in the amount of $325,000.00. The same jury found Arnold Pontiac's negligence to be 40% and Schussler's negligence to be 60%. After the verdict had been returned, Schussler's lawyer allegedly moved to mold the verdict to reflect the release for which Schussler had previously paid $14,000.00. When counsel for

1. The action had previously been commenced by praecipe for summons.

Ammon objected, the trial court took it under advisement. On behalf of Schussler, McCloskey also filed a post-trial motion raising, inter alia, the defense of the release.

A court en banc subsequently reduced the amount of the verdict to $60,000.00, but it did not decide the effect of the release.[2] On appeal, the Superior Court vacated the order of the trial court en banc and remanded the case to the trial court to consider and determine the effect of the release which had been executed by Ammon. See: *Ammon v. Arnold Pontiac–GMC*, 354 Pa.Super. 622, 508 A.2d 337 (1986) (memorandum decision). The trial court, without further hearing, filed an opinion and order holding that the defense of release had been abandoned because the release had not been asserted at trial. Judgment was entered on the verdict, as reduced by the trial court en banc, in the amount of $60,000.00. On appeal, a panel of the Superior Court affirmed the determination by the trial court that the defense of release had been waived. The same panel, however, reinstated the jury's verdict of $325,000.00. See: *Ammon v. Arnold Pontiac–GMC, Inc.*, 361 Pa.Super. 409, 522 A.2d 647 (1987).

In the meantime, Arnold Pontiac had settled with Ammon for $75,000.00 and had taken a joint tortfeasors' release. Subsequent to the Superior Court's decision, Schussler discharged McCloskey and hired new counsel, who negotiated a settlement between Ammon and Schussler. This agreement provided in part as follows:

10. Schussler hereby assigns, transfers, and conveys to Ammon, his successors and assigns, any and all of his right, title and interest in and to the right to recover, receive or have paid the aforementioned verdict amount awarded to Ammon against Schussler (including any delay damages, interests, fees and/or costs accruing thereto) from:

a) Erie Insurance Group, and/or

b) Phillips & Faldowski; and/or

**2.** The court observed that Ammon had commenced an action in equity to reform the release so as to make it a joint tortfeasors' release rather than a general release. This equity action, however, has never been decided.

c) Stephen P. McCloskey;  and/or

d) any insurer of the foregoing;  and/or

e) any other party except for the parties to this Agreement and their families.

11. This assignment does *not* include nor shall it constitute any assignment of cause(s) of action against any of the foregoing for:

i) damages sustained by Schussler for emotional distress;  and/or

ii) other economic damages suffered by Schussler; and/or

iii) punitive damages;  and/or

iv) the attorney fees and expenses of Schussler's independent counsel, McCune and Vreeland.

Simultaneously, Ammon and Schussler entered into a "Covenant Not to Sue and Covenant Not to Execute" wherein Ammon agreed, promised and covenanted not to ". . . execute, seize, levy, encumber, garnish, replevin or pursue in any way any of the past, present or future assets or income of KURT R. SCHUSSLER or his family, except for Schussler's rights against certain parties as set forth in the Settlement Agreement."

Ammon, as assignee of Schussler, then filed in Allegheny County an action against McCloskey, contending that McCloskey had been negligent in failing to introduce the release of Schussler by Ammon during the underlying action by Ammon to recover damages for his injuries. If it had been offered, it is contended, it would have been a complete defense. McCloskey defended on grounds that the release had been asserted during the unrecorded conference in the trial judge's chambers before the start of trial, and that it had then been agreed that the release should be raised and its effect determined following a return of the verdict by the jury. The trial court held, however, that McCloskey was collaterally estopped from denying that the defense of release had been abandoned by a failure to assert it. This, the court held, had been the result of negligence. Therefore, the court allowed Ammon to recov-

er from McCloskey the amount of the judgment which had been entered against Schussler in the prior action.

█ A claim for damages based on legal malpractice is assignable. *Hedlund Mfg. Co., Inc. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357 (1988). Such a claim does not involve personal injury and is more akin to a property right. *Id.* at 526, 539 A.2d at 359. Moreover, the assignment of such a claim does not violate public policy in Pennsylvania. *Id.* Because the Supreme Court painted with broad strokes in the *Hedlund Mfg. Co.* case, it appears that that Court also would find no violation of public policy where, as here, the assignee is the plaintiff who won a verdict against the assignor by virtue of the lawyer's alleged negligence in failing to prove a release by which the assignee had released the assignor from all claims. In an action by the assignee against the lawyer, however, it is clear that the assignee stands in the shoes of the assignor and does not pursue the cause of action in the assignee's own right. *Id.* See: *Gray v. Nationwide Mutual Ins. Co.*, 422 Pa. 500, 503, 223 A.2d 8, 9 (1966).

█ In a malpractice action based upon a lawyer's representation of a client in a civil matter, a plaintiff must establish the following three elements in order to recover: (1) the employment of the lawyer; (2) the failure of the lawyer to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff. *Bailey v. Tucker*, 533 Pa. 237, 246, 621 A.2d 108, 112 (1993); *Composition Roofers Local 30/30B v. Katz*, 398 Pa.Super. 564, 568, 581 A.2d 607, 609 (1990); *Schenkel v. Monheit*, 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979). "In any cause of action for malpractice, some harm must be shown to have occurred to the [client-assignor]." *Composition Roofers Local 30/30B v. Katz, supra* 398 Pa.Super. 564, 581 A.2d 607. See: *Guy v. Liederbach*, 501 Pa. 47, 56, 459 A.2d 744, 749 (1983). Thus, in *Schenkel v. Monheit, supra* 266 Pa.Super. 396, 405 A.2d 493, the Superior Court said:

"The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause

of action for negligence. Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." *Budd v. Nixen,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 852 [–853], 491 P.2d 433, 436–437 (1971).

*Id.,* 266 Pa.Super. at 399, 405 A.2d at 494 (footnote omitted).

In the instant case, the plaintiff-assignee failed to prove that his assignor had sustained any actual loss other than that a judgment for $222,000.60 had been entered against him in the prior, underlying action. Not only had there been no payment of the judgment by the assignor but the assignee, who was also the plaintiff in the prior, underlying action, had agreed, as part of the consideration for the assignment of the assignor's cause of action against his lawyer, that he would not enforce the judgment against the assignor's income or assets. However, the trial court held that the judgment entered against the client-assignor as a result of his lawyer's negligence constituted proof of actual damages and allowed the plaintiff-assignee to recover $220,000.60. It is argued on appeal that this constituted error.

This issue has not previously been before the appellate courts of this Commonwealth. Those courts of other jurisdictions which have considered the same issue have rejected the approach adopted by the trial court. In *Allied Productions, Inc. v. Duesterdick,* 217 Va. 763, 232 S.E.2d 774 (1977), the Supreme Court of Virginia held that when a client has suffered a judgment for money damages as a result of his attorney's negligence, the judgment constitutes actual damages recoverable only to the extent that the judgment has been paid. In *Thurston v. Continental Casualty Co.,* 567 A.2d 922 (Me.1989), the Supreme Court of Maine had before it a fact pattern similar to that in the instant case. There, the plaintiff was the assignee of a legal malpractice claim against lawyers who had defended the assignor in a products liability action. The plaintiff-assignee had also been the plaintiff in the prior products liability action and had recovered a verdict against the assignor for an amount in excess of the assignor's policy limits, allegedly because of the lawyers' negligence.

The trial court entered summary judgment in favor of the lawyers because the excess judgment had not been paid. The Supreme Court of Maine reversed. It held that the amount of the excess judgment was not the measure of damages which the assignee could recover. Still, the lawyers were not entitled to summary judgment, for inability to collect the judgment, if such was the case, did not necessarily foreclose other types of economic harm. The court said:

> We conclude that even if the defendants' proof has established that 3K was insolvent at the time of the excess judgment, that fact does not foreclose damages for the defendants' alleged malpractice or failure to defend or settle. It may be that 3K has not been damaged in the full amount of the excess judgment, for the proof may show that no such judgment could ever have been recovered against 3K. There are other elements of damages, however—for example, injury to credit rating, injury to reputation (3K may be able to prove that its name's good will possessed a value that would have been worth transferring to another had it not been for the excess judgment), and expenses incurred in dealing with the existence of the judgment and settling the claim. The point is that the choice is not between collecting the entire excess judgment and no damages at all.

*Id.* at 924 (footnote omitted).

Although the appellate courts of Pennsylvania have not considered this issue in the context of an action for legal malpractice, the Supreme Court has considered the same issue in the context of an assignee's action against an insurer for breach of its obligation to represent in good faith the rights of its insured. In *Gray v. Nationwide Mutual Ins. Co., supra,* the Court held that it was not necessary for the insured to pay the judgment in excess of policy limits in order to maintain an action against the insurer. The Court reasoned, inter alia, that "the fact of entry of the judgment itself against the insured constitutes a real damage to him because of the potential harm to his credit rating." *Id.,* 422 Pa. at 506, 223 A.2d at 10. See also: *Barr v. General Accident Group Ins.,*

360 Pa.Super. 334, 340, 520 A.2d 485, 488 (1987), *allocatur denied*, 517 Pa. 602, 536 A.2d 1327 (1987). The Court also observed that a contrary rule would permit the insurer to be less responsive to its fiduciary duties where the insured was impecunious than where the insured was able to pay the excess judgment.

■ After careful consideration, we conclude that the ruling of the Supreme Court in *Gray* must also be applied where a lawyer's negligence has proximately caused the entry of a judgment against the client. The lawyer occupies no less a fiduciary relationship to the client than an insurer occupies with respect to its insured, and the judgment entered against a client constitutes no less a real damage than the entry of a judgment against an insured.

We hold, therefore, that the trial court did not err when it required no further proof of economic harm than the entry of judgment against the client. However, we agree that the trial court erred when it held that the lawyer was collaterally estopped from showing that he had neither abandoned nor waived the defense of release in the prior, underlying action.

In the prior, underlying action, the effect of the release was never determined. Instead, it was held that Schussler's defense of release had been abandoned and/or waived because it had not been asserted on the record during trial. In the malpractice action against the lawyer who had represented Schussler in the underlying action, the lawyer asserted that, in fact, he had raised the release as a defense. The trial court in the malpractice action refused to hear this defense. It held that the lawyer-defendant in the malpractice action was collaterally estopped to deny that he had failed to assert the release in the underlying action.

■ Collateral estoppel, sometimes referred to as issue preclusion, "operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Schultz v. Connelly*, 378 Pa.Super. 98, 102 n. 4, 548 A.2d 294, 296 n. 4 (1988), quoting *Day v. Volkswagen-*

*werk Aktiengesellschaft,* 318 Pa.Super. 225, 236, 464 A.2d 1313, 1318 (1983). However, collateral estoppel is applicable only where: "(1) the issue decided in the prior action was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the plea is asserted has had a full and fair opportunity to litigate the issue in question in a prior action." *Grant v. GAF Corp.,* 415 Pa.Super. 137, 149, 608 A.2d 1047, 1053 (1992), *aff'd, Gasperin v. GAF Corp.,* 536 Pa. 429, 639 A.2d 1170 (1994). See: *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,* 526 Pa. 541, 546, 587 A.2d 1346, 1348 (1991), *cert. denied,* 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991); *Safeguard Mutual Ins. Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975); *Grossman v. Rosen,* 424 Pa.Super. 463, 466, 623 A.2d 1, 2 (1993). "Privity" is a term which the courts have never been able to define satisfactorily. It is defined by Black's Law Dictionary (5th ed. 1979) as "[m]utual or successive relationship to the same rights of property. In its broadest sense, 'privity' is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right."

At issue in this appeal is whether the defendant lawyer was in privity with the client whom, allegedly, he failed to represent with reasonable care in the prior action. To state the question, however, is also to answer it. In the prior action, the lawyer was a professional representative, who owed complete allegiance to the client, but who had no personal interest in the rights being litigated. His interests were not the same as the client, and he was not in privity with him. Therefore, it cannot be said that the lawyer had a full and fair opportunity to litigate in the prior action the reasonableness or the effect of his conduct in such prior action.

Whether the defense of release was waived or abandoned has never been fully litigated against the lawyer. The defendant lawyer asserted in the malpractice action that the release

had been raised informally during an off-the-record conference with the trial court in the prior, underlying action. It had then been agreed, it was alleged, that the effect of the release would be determined post-trial so as not to complicate unnecessarily the issues to be decided by the jury. Subsequently, however, the trial court held, and an appellate court affirmed, that the record in the prior action had failed to contain any reference to the release. Insofar as the rights of the defendant Schussler were concerned, therefore, the defense of release was held to have been waived or abandoned. That determination, however, did not prevent the lawyer from defending his conduct fully when he was subsequently sued for legal malpractice. He was not collaterally estopped in that action from litigating fully both the reasonableness and legal effect of his conduct in the prior action. When the trial court held otherwise, it erred. This error requires that a new trial be granted.

Because the matter must be retried, we do not now decide whether the assignee is also entitled to recover interest from the date on which the judgment was entered against his assignor. We observe, however, that it was not the judgment which was assigned but merely an undetermined tort claim.

Reversed and remanded for a new trial. Jurisdiction is not retained meanwhile.

KELLY, J., concurs in the result.