**Fultz v. Fine**

C.P. of Delaware County, no. 95-51044.

*Ronald David Ashby,* for plaintiffs.
*Amy L. Currier,* for defendant.

McGOVERN, *J.*, October 28, 1998—Defendant Andrew K. Fine has appealed from the denial of his post-trial motion in the above-captioned legal malpractice action.

This cause of action arose from defendant's representation of plaintiffs in two underlying legal matters. Defendant was retained by plaintiffs in May 1993 to execute upon a $1,500 judgment that had been obtained in the District Court of Chester, Pennsylvania, resulting from an action for improper engine repair work by Mike's Garage. (7/7/97 N.T. 13-15, 88.) Mike's Garage was granted leave to appeal from the district court's judgment nunc pro tunc by a judge of this court. *Fultz v. Mike's Garage,* no. 93-7523, in the Court of Common Pleas of Delaware County, Pennsylvania. (Exhibit P-5.) That court order required plaintiffs to file a complaint within 20 days from August 16, 1993 or suffer a judgment of "non pros." Defendant here, independently, filed a praecipe for writ of summons under case caption no. 93-50729 on August 16, 1993, but did not file a complaint in the appeal from the district justice decision until November 15, 1993. (Exhibit P-6.)[1] Mike's Garage, on November 19, 1993, filed a "complaint" captioned at no. 93-7523. This constituted, in effect, a counterclaim alleging that the matter of *Fultz v. Mike's Garage* had been frivolously filed. (Exhibit P-7.) Defendant here has never explained why he filed the writ on behalf of plaintiffs on August 16, 1993, under an entirely different case file and then later a complaint under the original file no. 93-7523. Defendant in the case sub judice claims that he never received a copy of the plead-

---

1. This was done in spite of a joint petition to continue the hearing scheduled under no. 93-7523 to mid-August 1993 so as to allow the parties time to attempt settlement. (N.T. 91; exhibit P-11.)

ing and that this explains his failure to ascertain its existence or to respond. (N.T. 99.)

When Mike's Garage received no answer to its "complaint," its attorney sent notice in December of 1993 of intention to obtain default judgment against plaintiffs. (N.T. 99-100; exhibit P-8.) Defendant in the case at bar took no action. Notice was sent January 4, 1994, of the entry of default judgment against plaintiffs and in favor of Mike's Garage, but again defendant here took no action. (Exhibit P-9.) Damages in the amount of $4,113.50 were assessed against the plaintiffs on February 15, 1994, and still the defendant proffered neither response nor any action to protect his clients, the plaintiffs here. (Exhibit P-10.) The writ filed by defendant Fine under the caption of *Fultz v. Mike's Garage,* no. 93-50729, was stricken on May 12, 1994, for failure to file a complaint.

Defendant Fine claims that he never received notices of default, suggesting that this occurred because he moved from his office in the first week of December 1993, before any such notices were sent, leaving no forwarding address. (N.T. 101-102, 123-24.) Defendant Fine, however, did admit that he used the office address to which all the notices were sent on a letter that he sent in August 1994, some eight months after he allegedly moved from that office. His excuse was that he failed to delete the address from his computer. (N.T. 36-40; exhibit P-3.) However, defendant Fine asserted in paragraph 3 of his answer to plaintiffs' complaint that the office was not actually closed until November 1994. Further, defendant testified that plaintiff James Fultz had been to his home "over 50 times" after December 1993, and lived but a block away, raising a very serious doubt that defendant was never informed by plaintiffs of the complaint and default notices filed against them in this regard. (N.T. 65.)

The second underlying matter involved a claim for the improper termination of electricity against the Philadelphia Electric Company in September 1993. (Exhibit P-12.) Defendant Fine had filed a complaint on behalf of plaintiffs Fultz but failed to appear at the scheduled hearing on October 22, 1993. Instead, the defendant sent his secretary-paralegal to request a continuance. (N.T. 50-51; exhibit P-2.) Judgment was entered in favor of PECO. (Exhibit P-13.) Plaintiffs Fultz appealed therefrom, and the matter, under the caption of *Fultz v. PECO,* no. 93-51613, was scheduled for compulsory arbitration on August 14, 1994. Defendant Fine notified plaintiffs immediately before the hearing that he had withdrawn the case pursuant to an agreement with PECO's attorney that jurisdiction of the matter properly was vested in the Public Utilities Commission. Defendant filed a praecipe to dismiss the case without prejudice, and thereafter ceased all involvement with this matter, providing no assistance to the plaintiffs in the furtherance of this claim. (Exhibit P-3.) Here, plaintiffs seek to recover in the above-captioned matter the costs and fees advanced to defendant in light of defendant's abandonment of plaintiffs.

This court, sitting without a jury, found in favor of plaintiffs, awarding compensatory damages in the amount of $5,279.74, and punitive damages in the amount of $8,000 against the defendant.[2] Defendant's timely filed post-trial motion was denied and this appeal followed.

2. The court awarded $4,113.50 in the *Mike's Garage* action, and the balance of the compensatory damages consisted of the costs and fees advanced to defendant in his prosecution of plaintiffs' action against PECO. This matter came to this court on defendant's appeal from an arbitration award in favor of plaintiffs in the amount of $38,195.95.

Defendant has filed an appeal contending basically that the verdict was against the weight of the evidence because there was neither factual nor legal basis supporting the award of compensatory damages or the award of punitive damages and also because there was no expert testimony to support the claim for compensatory or punitive damages.[3]

## WEIGHT OF THE EVIDENCE AND PROOF OF DAMAGES

Defendant Fine argues that the award of compensatory and punitive damages had no support in the evidence or in the law and, therefore, claims that he is entitled to a new trial.[4] It is the trial court's responsibility to assess credibility, weigh testimony, and review all of the competent evidence in determining whether a verdict rendered in a bench trial was against the clear weight thereof. *Weir v. Gasper,* 521 Pa. 491, 556 A.2d 819 (1989); *Allegheny County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985); *Tyus v. Resta,* 328 Pa. Super. 11, 476 A.2d 427 (1984). The trial court's determination thereof will be set aside only where there is clear abuse of discretion or error of law. *Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412 (1981). Credibility and the weight of evidence are left to the trier of fact. *Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973); *In the Interest of McElrath v. Commonwealth,* 405 Pa. Super. 431, 592 A.2d 740 (1991). The fact-finder is free to accept all, part, or none of a witness's testimony. *Weir v. Gasper, supra.* If the record adequately supports the trial court's verdict, then that court will be found

3. See defendant-appellant's concise statement of matters complained of on appeal.

4. Concise statement, paragraphs 1(a) and (b), and 2(a) and (b).

to have acted within the limits of proper judicial discretion. *Exner v. Gangewere,* 397 Pa. 58, 152 A.2d 458 (1959).

Defendant, in the case at bar, presented no trial witnesses other than himself, and presented but a minimum of trial exhibits. Although defendant, in his answer to plaintiffs' complaint, denied knowing anything about the complaint against Mike's Garage in the action no. 93-7523, he testified at trial to the filing of that complaint. (N.T. 19, 91.)

Defendant contended that he terminated the lawyer-client relationship with plaintiffs when plaintiff James Fultz took possession of a motor vehicle which had been retained by Mike's Garage against payment of the debt claimed by that garage arising from the alleged repairs. However, defendant drew up a complaint, affirmatively pleading in the *Mike's Garage* action that plaintiffs initiated the action after discovering that Mike's Garage employees routinely used plaintiffs' car for errands and after receiving threats of violence and a potential sale of the car if the lawsuit was not ended.[5] Defendant contended he never received a copy of the responsive pleading filed by Mike's Garage in that action or any other documents in that case. (N.T. 33, 35-40; exhibits P-8, P-9, P-10.) The then attorney for Mike's Garage indicated that the pleading filed by him was sent by certified mail to the defendant and returned unopened to the sender. (N.T. 159-60, 166). Counsel for Mike's Garage also stated that service of the notice of default and notice of assessment of damages was accomplished upon the defendant by regular mail and that was not returned. (N.T. 160-61.) That lawyer also testified that the defendant here had said in July or

---

5. Complaint, November 15, 1993, paragraphs 20-25.

August of 1993 that he no longer represented the plaintiffs Fultz. No petition to withdraw as counsel was ever filed. Such is true in each of the matters involved in this case.[6]

Defendant Fine contended that he terminated his representation of plaintiffs because on the night of August 16, 1993 and against his advice, plaintiff James Fultz took his car from Mike's Garage. He does not explain how that justifies his failure to comply with a court order to timely file a complaint in *Fultz v. Mike's Garage* (N.T. 16) or to file a petition to withdraw. Defendant denies any knowledge of the automobile's retrieval; however, plaintiff James Fultz testified that he had been driven to the garage by an employee of defendant and at the defendant's own direction. He also testified that he returned with the car to defendant's office, and that defendant had advised him to park the car at the home of one of defendant's relatives. (N.T. 18, 92-93, 182-84.) Plaintiff's testimony in this regard is supported by the averments in the complaint prepared and filed by defendant Fine in this underlying matter on November 15, 1993 which were designed to provide some justification for plaintiff's action.

Defendant suggests he gave plaintiff three or four months to find a new attorney and when plaintiff did not, defendant was "forced to file a complaint just to protect his interest." (N.T. 19, 91.) This, although defendant averred in paragraph 19 of his answer to plaintiffs' malpractice complaint that he never filed a complaint in the matter of *Fultz v. Mike's Garage.* (N.T. 22-23.) Defendant testified that the car repossession took place on August 25, 1993, and the complaint was

---

6. N.T. 160-61, 174; defendant's answer and new matter to plaintiffs' complaint, paragraphs 22-39.

prepared August 17, 1993. He suggested that that was a "typo." (N.T. 26.) Defendant has always retained his file in this regard although he did not bring it to trial. (N.T. 26-27.)

Defendant's testimony was also inconsistent as to whether or not he served a copy of the complaint against Mike's Garage upon Mike's Garage. (N.T. 27, 132.) Defendant's evidence was simply not credible.

Defendant has never explained why he filed a writ of summons against Mike's Garage in the same matter but under a different number (93-50729). (N.T. 43-44; exhibit P-3.)

Defendant indicated he failed to pursue the PECO litigation after December 10, 1993 when he filed a complaint on appeal from the district court's dismissal October 22, 1993 because plaintiff James Fultz's physician indicated he would not certify a medical emergency so as to have plaintiff's electricity reactivated. Defendant contends that plaintiff Fultz's representation that the electrical reactivation was necessary because of illness, was a lie. (N.T. 45-46, 52.) Plaintiffs' electricity had been terminated for nonpayment of their bill. Defendant, during the three-month interim between filing a complaint in the district court and filing a complaint with this court, never verified any payment arrangements made on plaintffs' bill, nor did he solicit or receive any documentation concerning the various representations allegedly made in that matter. (N.T. 46, 106, 111-17.) Defendant never explained why he proceeded to compulsory arbitration while purportedly believing that his client would proffer perjured testimony or while being convinced that proper jurisdiction rested in the PUC. (N.T. 66-68.)

Although defendant suggested he had filed a praecipe to dismiss the PECO case without prejudice on August

16, 1994 for jurisdictional reasons, defendant in effect abandoned his client at that point. Defendant contends that he gave the plaintiff lengthy written instructions on how to deal with a claim before the PUC. There is no evidence of such. Further, as defendant knew, plaintiff James Fultz could not read. There is no evidence that defendant ever dealt with plaintiff Gloria Fultz regarding the facts in issue in this matter.

Plaintiffs presented the testimony of the attorney for Mike's Garage in the 1993 matter and this generally supported the plaintiff's testimony.[7] That attorney testified that from the time of the complaint, November 19, 1993, until the judgment, February 1994, he was not contacted by either the defendant Fine or the plaintiffs Fultz. That judgment remains unpaid. (N.T. 170-71.)

Plaintiff James Fultz testified that it was defendant's law secretary who had driven him to the garage so that he could repossess his car. Plaintiff, having accomplished the repossession, drove back to defendant's office and was directed by defendant where to park the car. (N.T. 182-85.) Plaintiff's testimony rather clearly suggests that defendant led him on, indicating that the matters were in progress without any termination of the lawyer-client relationship. Plaintiff confirmed that he was unable to read. (N.T. 193, 215.) Plaintiff testified that if he had received any legal papers, he would have delivered them to defendant.

Plaintiff testified that he has, and had, been treated for asthma and that it was a medical necessity to have

---

7. It must be noted that the plaintiff's repossession of his car from Mike's Garage either happened on August 19, 1993 or August 16, 1993 or August 25, 1993 according to defendant's testimony. (N.T. 16, 92-94, 123-24.)

the electricity turned on so that the air in his house could be properly conditioned. Plaintiff also testified that defendant never said that his doctor claimed plaintiff was lying. (N.T. 194.) Plaintiff said that he had given defendant a prescription form stating that he had asthma and that it was necessary to have electricity. (N.T. 210.) Defendant advised plaintiffs for the first time in August of 1994, that his case would be better placed before the PUC. (N.T. 196-97.) Plaintiff contends that defendant said he would take care of "everything." (N.T. 196-97.) Plaintiff never filed a case with the PUC because he did not know how, and, indeed, did not know what the PUC is. (N.T. 197-98.) Again, the defendant led the plaintiff to believe that all was in order. (N.T. 197, 203.) Indeed, through all of this, plaintiff continued to do part-time work for the defendant until just before defendant closed his office in 1994. (N.T. 204-205.)

Plaintiff's position in this matter, that defendant did not terminate the lawyer-client relationship, is supported by the record which reflects that following the repossession of his automobile by plaintiff, defendant went on to file a complaint in the district court for the PECO case, and, as well, complaints on appeal in both the *PECO* and *Mike's Garage* actions, and to handle, in some way, the PECO matter up to its arbitration date.

The law requires that plaintiff establish, in a legal malpractice action, the existence of a lawyer-client relationship; that the attorney failed to exercise ordinary skill and knowledge; and that the attorney's failure to exercise that skill and knowledge was a proximate cause of harm to the plaintiff. *Kituskie v. Scott K. Corbman, Esquire, and Garfinkle, Corbman, Greenberg and Jurikson P.C.,* 552 Pa. 275, 714 A.2d 1027 (1998); *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58 (1989); *Fiorentino v. Rapoport, Gordon and Saul, Ewing, Remick & Saul,*

693 A.2d 208 (Pa. Super. 1997). The standard of care requires that an attorney possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances. *Rizzo v. Haines, supra.* The burden of proof is, of course, by a preponderance of the evidence. *McPeake v. William T. Cannon, Esquire,* 381 Pa. Super. 227, 553 A.2d 439 (1989).

The plaintiffs must also prove an actual loss resulting from that causal negligence. *Mariscotti v. Tinari P.C.,* 335 Pa. Super. 599, 485 A.2d 56 (1984). R. Mallen & V. Levitt, Legal Malpractice, section 303 (2d Ed. 1981). Obviously, damages may not be awarded based on speculation or conjecture. *Delahanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 464 A.2d 1243 (1983); *Trice v. Mozenter,* 356 Pa. Super. 510, 515 A.2d 10 (1986). The breach of a professional duty causing only nominal damages, speculative harm, or the threat of future harm not yet realized, does not suffice to establish a cause for negligence. *Ammon v. McCloskey,* 440 Pa. Super. 251, 655 A.2d 549 (1995); *Kituskie v. Scott K. Corbman, Esquire, and Garfinkle, Corbman, Greenberg and Jurikson, supra; Duke & Co. v. Anderson,* 275 Pa. Super. 65, 418 A.2d 613 (1980); *Gans v. Gray,* 612 F. Supp. 608 (E.D. Pa. 1985).[8] The law in this Commonwealth simply requires, in a legal malpractice action, that the entry of a default judgment against a lawyer's client with the result of causal negligence is sufficient to award damages. *Ammon v. McCloskey,* 440 Pa. Super. 251, 260, 655 A.2d 549,

---

8. Defendant here has never raised, pled, or argued any claim of uncollectibility from the underlying actions and, therefore, that issue need not be considered in this opinion. *Kituskie v. Scott K. Corbman, Esquire, and Garfinkle, Corbman, Greenberg and Jurikson P.C., supra,* 714 A.2d at 1031-33.

553 (1995), relying upon *Gray v. Nationwide Mutual Insurance Co.,* 422 Pa. 500, 506, 223 A.2d 8, 10 (1966). Such is the case, even though that judgment remains unpaid.

Punitive damages are appropriate where the wrongful conduct is outrageous. Outrageous conduct, in an attorney malpractice action, occurs when it is "malicious, wanton, reckless, willful or oppressive." *Rizzo v. Haines,* 520 Pa. 484, 506, 555 A.2d 58, 69 (1989). Offending conduct must evince evil motive or reckless indifference to the rights of others. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984); *Hess v. Hess,* 397 Pa. Super. 395, 580 A.2d 357 (1990).

Defendant's negligence in failing to represent the plaintiffs' interests and in abandoning their claim in both of these underlying actions can hardly be characterized as other than wanton, outrageous and recklessly indifferent to plaintiffs' rights. *Rizzo v. Haines, supra.* Defendant's own pleadings and testimony in this action are uncorroborated, inconsistent, and in large part incredible. There is no evidence that plaintiff's repossession of his car resulted in defendant's refusal of further representation, and, indeed, the record suggests otherwise. There has been no effort at any point in the underlying matter on the part of defendant to properly terminate his representation. The neglect in filing a complaint pursuant to court order in the *Mike's Garage* matter, followed by complete inaction, was all presented without justification or legal excuse. The suggestion that notices were not received because of change of address, when that address change was accomplished a year after the notice and after counsel was aware of the actions and when counsel used stationery nine months after the notices setting forth that address, leaves incredible defendant's weak excuses as to why he did

nothing. Any client would expect that his lawyer is monitoring the record so as to confirm his understanding of the pleadings filed.

Defendant's failure to discern proper jurisdiction in the PECO matter, his failure to appear at the initial hearing before the district justice, is not only negligent but wanton and reckless indifference. Defendant's suggestion that plaintiff lied in the PECO matter concerning his medical disability is unsupported by testimony or other evidence in this matter. Indeed, it is contradicted by plaintiff. Defendant's taking of an appeal from the district justice to the wrong court, together with the attendant costs, and the over one year delay, aggravated by continuing misrepresentations that the matter was being "taken care" of, was certainly wantonly reckless and outrageous conduct. The suggestion that defendant afforded detailed instructions to his client who was unable to read so that he could handle his own case in the PUC is also incredible.

The record, the evidence and the law clearly support that plaintiffs established by a preponderance of the evidence that defendant was causally negligent entitling plaintiffs to compensatory damages, and further, that defendant's actions were outrageous, entitling plaintiffs to punitive damages. It is respectfully suggested the record and the law of this Commonwealth support this court's conclusions and establish that the denial of defendant's post-trial motion was not an abuse of discretion.

## EXPERT TESTIMONY

Defendant here argues that the court's verdict is in error because plaintiffs presented no expert testimony to establish their claims to compensatory and punitive damages.[9]

---

9. Concise statement, paragraphs 1(c) and 2(c).

The trial court has the authority and the responsibility to control the admission of expert testimony. *Klyman v. SEPTA,* 331 Pa. Super. 172, 480 A.2d 299 (1984). The admission of such is a matter for the discretion of the trial court necessitating a new trial only where there is a clear abuse of discretion. *Laubach v. Haigh,* 433 Pa. 487, 491, 252 A.2d 682, 683 (1969); *Kubit v. Russ,* 287 Pa. Super. 28, 429 A.2d 703 (1981).

It is clear that the determination of legal malpractice necessitates an evaluation of professional skill and judgment, as well as a determination of whether a standard of care related to common professional practice has been violated. *Lentino v. Fringe Employee Plans Inc.,* 611 F.2d 474 (3d Cir. 1979). Thus, expert testimony is necessary when the matter involved is not within the range or scope of ordinary knowledge and understanding. *Gans v. Mundy, infra; Lentino v. Fringe Employee Plans Inc., supra.*

Expert testimony in any action becomes necessary when the subject matter under inquiry involves special skills or training not common to the ordinary layperson. *Sprague v. Walter,* 441 Pa. Super. 1, 656 A.2d 890 (1995); *Storm v. Golden,* 371 Pa. Super. 368, 538 A.2d 61 (1988), *appeal denied,* 524 Pa. 630, 574 A.2d 71 (1989). Expert testimony is *not* required in a legal malpractice action where the issues are not "beyond the knowledge of the average person." *Bannar v. Miller,* 701 A.2d 242 (Pa. Super. 1997); *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58 (1989). The issues in the case at bar are clearly within the scope of knowledge and understanding of ordinary lay men and women, and defendant's deviation from the obvious standard of care for attorneys is not complex as a matter of law or fact. The skills necessary to deal with the lawyer-client relationship in the case at bar are founded in every persons understanding of fairness, common sense and loyalty. Defendant in the underlying actions here simply

failed to represent his clients in any other than a cursory manner and then abandoned them. There was neither careful nor diligent prosecution of the claims placed in defendant's hands by plaintiffs, and, indeed, defendant continued to accept the services of plaintiff James Fultz well beyond time of the malpractice, and plaintiffs remained uninformed until after defendant closed his office. There is no need for expert testimony to establish that defendant's conduct failed to adhere to any ordinary standard of care, that defendant failed to exercise even ordinary skill and knowledge, and further, that such was the proximate cause of harm to the plaintiffs. *Fiorentino v. Rapoport, Gordon and Saul, Ewing, Remick & Saul, supra.*

Defendant has never presented evidence or argument to suggest why the resolutions of the issues in this case were beyond the scope of knowledge and understanding of ordinary lay men and women. *Lentino v. Fringe Employee Plans Inc.,* 611 F.2d 474 (3d Cir. 1979); *Gans v. Mundy,* 762 F.2d 338 (3d Cir. 1985); *Storm v. Golden, supra.* Further, it must be observed that defendant did not seek a jury trial and, therefore, this fact-finder indeed had and could have exercised sufficient knowledge and experience to determine the standard of care and any violation thereof, should such have been necessary. It is respectfully submitted that expert testimony was not necessary and, indeed, would have been inappropriate in a case such as this one where the issues are uncommonly, simply and clearly within the scope of knowledge and understanding of ordinary fact-finders.

## CONCLUSION

The law, in reviewing the denial of a motion for new trial, focuses on whether the verdict was against the clear weight of the evidence or whether there was

308

a clear error of law or a palpable abuse of discretion on the part of the trial court. *Klyman v. SEPTA, supra; Tyus v. Resta, supra.* Abuse of discretion by a trial court must rest upon a showing of clear and convincing evidence. *Dalton v. Dalton,* 409 Pa. Super. 258, 597 A.2d 1192 (1991); *Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413 (1987); *Solomon v. Baum,* 126 Pa. Commw. 646, 560 A.2d 878 (1989). An abuse of discretion is not merely an error of judgment, but where the law is overridden or misapplied, or the judgment manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as demonstrated from the evidence. Then is discretion abused. *Spitzer v. Tucker,* 404 Pa. Super. 539, 591 A.2d 723 (1991); *Ludmer v. Nernberg,* 433 Pa. Super. 316, 640 A.2d 939 (1994). A new trial will be awarded only where the verdict is so contrary to the evidence as to shock one's sense of justice. *Palange v. City of Philadelphia, Law Department,* 433 Pa. Super. 373, 640 A.2d 1305 (1994); *Giovanetti v. Johns-Manville Corp.,* 372 Pa. Super. 431, 539 A.2d 871 (1988).

It is respectfully suggested that, in light of all of the foregoing reasons, the denial of defendant's post-trial motion was well-founded in this record, the law, and justice.