

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2004

# Guthrie Clinic LTD v. Travelers Indemnity

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Guthrie Clinic LTD v. Travelers Indemnity" (2004). *2004 Decisions*. Paper 579.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/579

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-3502

———————

GUTHRIE CLINIC, LTD,
Appellant

v.

TRAVELERS INDEMNITY COMPANY OF ILLINOIS;
ELLEN THURSTON; AON CORP; AON RISK SER,
Now known as AON Risk Services Inc., of Maryland

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 00-cv-01173)
District Judge:  Honorable James M. Munley

———————

Argued January 15, 2004

Before:  SLOVITER, RENDELL and ALDISERT, <u>Circuit</u> <u>Judges</u>.

(Filed:   June 29, 2004)

———————

Stephen J. Mathes   **[ARGUED]**
Jan F. Call
Hoyle, Fickler, Herschel & Mathes
One South Broad, Suite 1500
Philadelphia, PA  19107
     *Counsel for Appellant*

Todd B. Narvol   **[ARGUED]**
Thomas, Thomas & Hafer
305 North Front Street
P.O. Box 999
Harrisburg, PA  17108
   *Counsel for Appellee,*
   *Travelers Indemnity*
   *Company of Illinois*

J. David Smith   **[ARGUED]**
McCormick, Reeder, Nichols, Bahl, Knecht & Person
835 West Fourth Street
Williamsport, PA  17701
   *Counsel for Appellees,*
   *AON Corp and AON Risk Ser,*
   *Now known as AON Risk Services Inc., of Maryland*

---

## OPINION OF THE COURT

---

This appeal comes to us from an order of the United States District Court for the Middle District of Pennsylvania dismissing an action brought by Guthrie Clinic, Ltd. ("Guthrie"), a Pennsylvania entity, against several entities purportedly responsible for providing Guthrie with excess liability insurance coverage for certain years.  In particular, Guthrie alleges that renewal insurance policies it retained for 1998 and 1999 were, contrary to its expectations, materially different from its previous insurance policies.  Because of the resulting gaps in coverage, Guthrie alleges that it suffered losses which it urges it had reasonably assumed were covered.  Guthrie filed a diversity suit in federal court against the insurance carrier for the 1998 and 1999 policies, Travelers

Indemnity Company of Illinois ("Travelers"), and certain entities that brokered the relevant insurance policies. Upon a motion filed by Travelers, the District Court concluded that Guthrie had failed to join the particular insurance broker, a Pennsylvania entity that it alleged had been instrumental in securing Guthrie's 1999 renewal policy. Having determined that broker to be a necessary and indispensable party pursuant to Fed. R. Civ. P. 19, the District Court dismissed the action because the joinder of a non-diverse party would destroy its subject matter jurisdiction. We have jurisdiction over the District Court's final order under 28 U.S.C. § 1291. We will affirm.

I.

Guthrie purchased a $5 million excess insurance policy from Travelers covering the period between September 1, 1996 and September 1, 1997 (the "1996 policy"). An excess insurance policy provides secondary insurance after the primary insurers' coverage, here $1.2 million, has been exhausted. Travelers issued a renewal policy identical to the 1996 policy in 1997. The 1998 renewal policy was, by contrast, materially different. The changes allegedly included a new definition of covered claims and modified notification procedures. Guthrie alleges that because these changes to the insurance policy were made unilaterally and without any notice, it was under the belief that the coverage was identical to the 1996 and 1997 policies. In August of 1999, Guthrie signed a 1999 renewal policy that was identical to the 1998 renewal policy in all material respects, again assuming the provisions mirrored those of the 1996 and 1997

3

policies.

In June of 1998, Ellen Thurston filed a medical malpractice claim against various defendants including Guthrie. Aware that the suit was likely to reach the limits of its primary coverage and implicate its excess liability coverage, Guthrie notified Travelers of the Thurston claim. Citing the changed portions of the 1998 policy, Travelers rejected coverage of the claim on September 17, 1999. The Thurston suit eventually settled for $6.1 million, $2.5 million of which was in excess of Guthrie's primary coverage, and which Guthrie contends Travelers should have paid. In addition to Thurston's lawsuit, twenty-seven other medical malpractice claims have been since brought against Guthrie, but these claims have yet to implicate any excess insurance coverage policy.

Each of these Travelers policies, from 1996 to 1999, was brokered by various entities related to Aon Corporation, a Delaware corporation. Guthrie learned through discovery that Aon Corporation was merely a parent holding company for specific entities that brokered the relevant insurance policies to Guthrie. One such entity was Aon Risk Services, Inc. of Pennsylvania (hereinafter "ARS PA I"),[1] a Pennsylvania corporation, which sold Guthrie the 1996 and 1997 policies. In March of 1998, ARS PA I merged with Alexander & Alexander, Inc. to form an entity called Aon Risk Services,

---

[1]For the sake of convenience, we will retain the abbreviations used by the District Court.

Inc. U.S., a Maryland corporation.[2] In June 1999, Aon Risk Services, Inc. U.S. changed its name to Aon Risk Services, Inc. of Maryland (hereinafter "ARS US/MD"). ARS US/MD brokered the 1998 policy, which was implicated in the settlement following the Thurston lawsuit. In February of 1999, a new Pennsylvania corporation was formed, Aon Risk Services, Inc. of Pennsylvania (hereinafter "ARS PA III").[3] ARS PA III sold Guthrie the 1999 policy.

After Travelers rejected secondary insurance coverage of the Thurston claim, Guthrie sued under various theories seeking *inter alia* compensatory damages with respect to the Thurston claim and declaratory relief ensuring that the twenty-seven other malpractice claims would be covered by Travelers. Guthrie filed the action in federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332. The complaint named Travelers (a Connecticut company), Aon Corporation (a Delaware company and the parent company of the various brokerage entities), and ARS US/MD (a Maryland company). Travelers moved the District Court to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(7) and 19, contending that a non-diverse (Pennsylvania) entity, ARS PA III, was an indispensable party to the action. The District Court agreed that Guthrie's

---

[2]The District Court expressly declined to consider Travelers' challenges to the propriety of this merger in support of its Rule 19 motion. Likewise, we need not entertain this issue on appeal as it was not considered by the District Court and is unnecessary to our disposition.

[3]In June of 1998, Aon Risk Services, Inc. U.S. sought to register itself in Pennsylvania under the fictitious name of Aon Risk Services, Inc. of Pennsylvania (hereinafter "ARS PA II"), but then canceled this name not long thereafter.

complaint could not go forward without the joinder of ARS PA III, which divested the Court of diversity jurisdiction and required dismissal for lack of jurisdiction. Guthrie timely appealed.

## II.

A Rule 19 inquiry is bifurcated.[4] First, under Rule 19(a), a district court considers whether a party is necessary to an action. If a party is deemed necessary, then joinder

---

[4]Rule 19 provides in part that:
(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if
(1) in the person's absence complete relief cannot be accorded among those already parties, or
(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
(i) as a practical matter impair or imped the person's ability to protect that interest or
(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.
(b) Determination by the Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
Fed. R. Civ. P. 19.

must occur if feasible. If, as here, the addition of a necessary party would divest a court of subject matter jurisdiction, then a court must determine whether in "equity and good conscience" the action should proceed without that party, or whether the action should be dismissed, "the absent person being thus regarded as indispensable." Accordingly, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction.

We review a district court's determination as to Rule 19(a) *de novo*, while reviewing subsidiary findings of fact under a clear error standard. Gardiner v. V.I. Water & Power Auth., 145 F.3d 635, 640 (3d Cir. 1998). We review a court's ruling under Rule 19(b) for abuse of discretion. Id.

A.

The District Court concluded that ARS PA III was a necessary party under Rule 19(a), holding that absent ARS PA III "complete relief [could not] be accorded among those already parties." Fed. R. Civ. P. 19(a)(1). We agree.

The District Court held that while Guthrie sought relief with respect to the 1999 policy, it did not name the necessary party responsible for brokering that policy, ARS PA III. Initially, along with Travelers, Guthrie sued Aon Corporation, the parent entity based in Delaware, but upon discovering that it was but a holding company, Guthrie amended its complaint to "add[] the Aon corporate entity responsible for procuring the 1998 Renewal Policy," which was ARS US/MD. App. Br. at 10. But the allegations and

7

relief requested in Guthrie's complaint were not limited to the 1998 policy, but indeed referenced the 1999 policy as well.

Guthrie argues that any mention of the 1999 policy in the complaint was just a "factual statement" and not an allegation as such. But even a cursory reading of the complaint reveals specific allegations concerning the 1999 policy. Guthrie does not just set out facts but seeks to attach liability with respect to the brokerage of the 1999 policy. See Pl. Compl.¶ 128 ("[A]t no time during the 1999 renewal process did AON inform Guthrie that the terms and conditions of the proposed 1999 Renewal Policy differed materially from the terms and conditions of the 1997 Renewal Policy or that the 1999 Renewal Policy would create a significant gap in Guthrie's Insurance Coverage.")[5] For the gaps in coverage in both the 1998 and 1999 policies, Guthrie "demand[ed] that judgment be entered against AON for compensatory damages in excess of $75,000 plus exemplary damages, interest and attorneys' fees, together with such relief as the Court deems just and appropriate." Pl. Compl.¶ 209. As noted above, the specific corporate entity that brokered the 1999 policy was not ARS US/MD but ARS PA III. We agree with the District Court that, as the complaint predicated liability and relief on the 1999 policy, complete relief cannot be accorded without the joinder of ARS PA III as per Rule

_____

[5]Guthrie further averred that "[b]ut for AON's conduct, Guthrie would have procured excess layer insurance policies for the 1998 and 1999 policy period which provided coverage for the claims at issue in this litigation and which would not have created the gap in coverage created by the 1998 and 1999 Travelers policies." Id. ¶ 204.

8

19(a)(1).

Having determined that Rule 19(a)(1) applies, we need not labor over the remaining factors. See Angst v. Royal Maccabees Life Insur. Co, 77 F.3d 701, 706 (3d Cir. 1996) ("Under Rule 19(a), we need only find that the party's absence results in any of the problems identified in the rule." (citing Estrella v. V & G Mgmt. Corp, 158 F.R.D. 575, 579 (D.N.J. 1994))). Our conclusion that ARS PA III is a necessary party under Rule 19(a) brings us to the indispensability inquiry under Rule 19(b), to which we turn next.

B.

While not exhaustive, the four factors listed under Rule 19(b) are "the most important considerations" in deciding whether a party is indispensable. See Gardiner, 145 F.3d at 640–41. The District Court focused its Rule 19(b) inquiry on the fourth factor listed under the Rule, namely, the availability of an adequate remedy for the plaintiff if the matter were dismissed. The District Court observed that Guthrie has an alternative forum in state court, a conclusion which Guthrie has not seriously contested.[6] Rather, Guthrie takes issue with the District Court's statement that the fourth factor was dispositive of the Rule 19(b) inquiry.

To support its reasoning that one Rule 19(b) factor was sufficient, the District

---

[6]Guthrie acknowledges that it has filed a Writ of Summons in state court against ARS PA III and ARS US/MD.

Court cited to our opinion in Angst, where we indeed reasoned that the fourth factor was dispositive of the inquiry. But we limited the holding in Angst to the facts of that case. 77 F.3d at 706 ("*In this case*, the fourth factor listed in Rule 19(b), whether the plaintiff will have an adequate remedy if the action is dismissed, is dispositive." (emphasis supplied)). Ordinarily, however, the availability of a state forum cannot alone support a finding of indispensability. See Bank of Am. Nat'l Trust & Sav. Assoc v. Nilsi, 844 F.2d 1050, 1055 (3d Cir. 1988) ("surely the availability of an alternative forum cannot be the sole basis for dismissing a suit commenced in the federal courts." (quoting J. Moore, Moore's Federal Practice ¶ 19.07-2[4], at 19-161 (2d ed. 1979))). Regardless of the fourth factor, the District Court nevertheless went on to briefly consider the three remaining factors.

Rule 19(b)'s first factor involves the extent to which "a judgment rendered in the person's absence might be prejudicial to the person or those already parties." Fed. R. Civ. P. 19(b). We have observed that this factor is closely related to the "inability to accord complete relief" test under 19(a)(1). Gardiner, 145 F.3d at 641 n.4 ("The first factor under Rule 19(b) overlaps considerably with the Rule 19(a) analysis."). We conclude that it would be impossible to accord complete relief with respect to Guthrie's claim against the 1999 policy without prejudicing ARS PA III.

We agree with the District Court that the interest of ARS PA III was also "great" because of the specific allegations against it in the complaint, against which ARS PA III

10

if not present could not defend. Any adverse judgment or finding as to liability could, as Travelers suggests, be held to bind ARS PA III in another forum, if it were considered to be in privity with the related AON entity, ARS US/MD, the named party that sold Guthrie its 1998 policy. See, e.g., Delaware Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2002). If, based on such privity, Guthrie were to seek to preclude ARS PA III from relitigating a judgment or related issues found in this case, it is likely that the law of Pennsylvania would govern. While we express no opinion here as to the Pennsylvania courts' understanding of privity, or predict the outcome of any privity analysis, we note that there are some indications in the record that could arguably support a finding of privity. For instance, the various Aon entities share the same counsel, a factor which, while not necessarily dispositive, is considered by some courts to be indicative of privity. Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 677 (5th Cir. 2003). Further, despite the various corporate forms, the record indicates that the same insurance agent, using the same office in Pennsylvania, brokered each of the relevant policies. These and other relevant factors might compel a court to later find an identity of interest between ARS MD and the absent ARS PA III. See Ammon v. McCloskey, 655 A.2d 549, 554 (Pa. Sup. Ct. 1995). Accordingly, the attendant possibility of claim or issue preclusion further supports the conclusion that ARS PA III is likely to be prejudiced absent its joinder.

The second and third factors listed under Rule 19(b) are closely linked and, in this

11

case, also weigh in favor of finding indispensability. The second factor involves the extent to which a court can shape the relief awarded in such a manner as to mitigate prejudice, and the third factor ensures that any such relief will be adequate. As noted above, Guthrie's complaint sought to attach liability with respect to the brokerage of the 1999 policy; specifically Guthrie averred, and sought a ruling, that intentional or negligent misrepresentation of the contents of the 1999 policy led to a gap in its coverage. For this harm, Guthrie "demand[ed] that judgment be entered against AON for compensatory damages in excess of $75,000 plus exemplary damages, interest and attorneys' fees, together with such relief as the Court deems just and appropriate." Pl. Compl.¶ 209. However, in the absence of ARS PA III in this litigation, it would have been difficult to fashion *any* adequate remedy with respect to the 1999 policy.

On appeal, Guthrie lamely argues that because it does not yet face any lawsuits that have implicated the excess liability coverage in the 1999 policy, no damages have yet accrued under that policy, and it only seeks declaratory relief regarding the broker's liability. But even if the District Court is not assessing monetary damages, Guthrie has sought other "just and appropriate" relief. And it is plain that without the joinder of ARS PA III, any remedy related to the brokerage of the 1999 policy, be it injunctive or declaratory relief, would be unfair and prejudicial to ARS PA III.

### III.

Accordingly, we conclude that the District Court did not abuse its discretion in

12

finding that ARS PA III was an indispensable party.  The order of the District Court will

be AFFIRMED.

———————————