

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2007

# Greenway Ctr Inc v. Essex Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 05-3782

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Greenway Ctr Inc v. Essex Ins Co" (2007). *2007 Decisions.* Paper 1696.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1696

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3782
_____

GREENWAY CENTER, INC.

vs.

ESSEX INSURANCE COMPANY
<u>Appellant</u>

ANNETTE MAIONE, Individually and
as Administrator of the Estate of Mark
Willet

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(No. 04-CV-01143)
District Judge: Honorable James M. Munley
_____

Argued on November 27, 2006
_____

Before: FUENTES and GARTH, <u>Circuit</u> Judges, and
POLLAK, <u>District</u> Judge[1]

(Opinion Filed: January 30 , 2007)


Richard D. Picini, Esq. (argued)
Jennifer L. Casatelli, Esq.
Picillo Caruso O'Toole, P.C.
371 Franklin Avenue
Nutley, NJ 07110
     *Counsel for Appellant Essex Insurance Company*

Ronald V. Santora, Esq. (argued)
Bresset & Santora, LLC
1188 Wyoming Avenue
Forty Fort, PA 18704
     *Counsel for Appellee Greenway Center, Inc.*

Joseph P. Hanyon, Esq. (argued)
Michael B. Kaspszyk, Esq.
Merwine, Hanyon, Kaspszyk, LLP
HC 89, Box 105, Route 940
Pocono Summit, PA 18346
     *Counsel for Appellee Annette Maione*

_____

---

[1] The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT
_____

GARTH, <u>Circuit</u> <u>Judge</u>:

This appeal requires us to decide whether the district court properly held that it was foreclosed by the doctrine of issue preclusion from making an independent determination whether appellee Greenway Center, Inc. ("GCI") is a successor in interest to Winco Acquisitions, Inc. ("Winco") – a company which was insured by appellant Essex Insurance Company ("Essex"). The district court found that a state court had already decided the issue – i.e., that GCI *is* a successor in interest to Winco, and therefore held that Essex is obligated to defend and indemnify GCI in the state court action brought by appellee Annette Maione against GCI. Because we find that the requirements for the application of issue preclusion have not been met, we vacate the judgment in favor of GCI and remand to the district court for an independent determination, on the merits, of whether GCI is a successor in interest to Winco.

I.

In 1996, Winco, a Pennsylvania Corporation, began operating a substance abuse detoxification center named Greenway Center ("Greenway") in Henryville, Pennsylvania.[2]

_____

[2] GCI was incorporated more than a year after Winco (which operated Greenway Center) filed in bankruptcy. To

-3-

On June 16, 1997, Winco filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania. Approximately one week later, on June 23, 1997, Mark Willet was admitted for treatment at Greenway. The following morning, June 24, 1997, Willet was found dead, giving rise to a wrongful death action brought in the Pennsylvania Court of Common Pleas by Annette Maione, Willet's wife and administratrix. As a result of this incident, the Pennsylvania Department of Health revoked Winco's license to operate Greenway, and Greenway temporarily ceased operations in November 1997.

In March 1998, while Winco was still in bankruptcy, Greenway was reopened by an entity named Healthcare Management Associates, Inc. ("HMA"), which was authorized by the Bankruptcy Court to operate the facility as an agent for Winco. In September 1998, GCI, plaintiff-appellee in the present case, was incorporated in Pennsylvania by the owners of HMA. On October 16, 1998, HMA submitted to the Bankruptcy Court on behalf of Winco a Debtor's Plan of Reorganization and a Debtor's Disclosure Statement.[3] On September 7, 1999, the

avoid confusion, we refer to Greenway Center – the facility operated by Winco and later by GCI – as Greenway, as distinct from GCI, the corporate entity.

[3] At the non-jury trial held before the district court on April 19, 2005, Wallace Slatinsky, a former executive director and a shareholder of HMA testified that HMA was formed for

-4-

Bankruptcy Court entered an order confirming the plan. After the plan was confirmed, HMA continued to operate Greenway until the Pennsylvania Department of Health license was transferred to GCI in January 2002. GCI then began operating Greenway.

Beginning at least as early as February 3, 1997, Essex issued a general liability insurance policy covering certain liabilities arising from the operation of Greenway. The named insured on the policy was "Winco Acquisition, Inc. d/b/a Greenway Center." The policy contained a non-assignability clause, which states: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."

---

the purpose of operating Greenway Center, because the Pennsylvania Department of Health had withdrawn Winco's license to operate the facility. In order to reinstate Greenway's license, the Pennsylvania Department of Health imposed upon HMA several requirements including a condition that none of the ownership or management of Winco would be involved in HMA while HMA was operating the facility.

II.

On June 23, 1999, appellee Annette Maione, Mark Willet's wife and the administratrix of his estate, filed a wrongful death action in the Court of Common Pleas of Monroe County (the "state court action"). Maione named as defendant in the action only GCI and not Winco. GCI was not a named insured on Essex's policy.

Essex initially engaged attorney Frank Baker to represent GCI in the state court action. However, at some point Essex came to the conclusion that *GCI was not insured under its policy* and, on December 28, 1999, Essex sent GCI a letter formally denying coverage in the state court action. On or about March 30, 2000, Baker formally withdrew from representing GCI.

Because GCI did not come into existence until a year after Willet's death and Winco's bankruptcy, that entity – GCI – could only be held liable for the death if it were found to be a successor in interest to Winco. Thus, by filing her action against GCI, Maione had named the wrong defendant.

On July 21, 2000, in an effort to remedy her error, Maione filed a *second* wrongful death action in the Court of Common Pleas of Monroe County – this action named Winco as defendant. Essex retained counsel to defend Winco, its named insured, in this second action. On December 31, 2001, this second action was dismissed on the grounds that Willett had died in 1997 and thus the two-year statute of limitations had

expired.

### III.

On June 3, 2002, Maione filed a Motion to Correct Name of Defendant in the state court action. The motion sought an order "allowing [Maione] to amend the caption so as to name the defendant as "Winco Acquisition, Inc. d/b/a Greenway Center" *or* "Greenway Center, Inc. as successor in interest to Winco Acquisition, Inc." In support of this motion, Maione asserted that:

> On the date that the subject writ of summons was served, both Greenway Center, Inc. and Winco Acquisition, Inc. d/b/a Greenway Center operated under the identical name, "Greenway Center", operated the identical business at the identical mailing address and at the identical location where the death of plaintiff's decedent occurred.
>
> . . . .
>
> Allowing a correction of the name of the defendant will allow the court to secure a determination of this case based upon the merits rather than a mere technicality.

App. at 106-7.

Essex engaged Frank Baker (the same attorney it had retained to defend Winco in the second wrongful death action,

which had been dismissed) to file *on behalf of Winco*[4] a Petition to Intervene *to oppose Maione's motion to amend*. In the Petition, Winco asserted that "the plaintiff's motion is an improper attempt to join Winco well after the expiration of the statute of limitations." Together with the Petition to Intervene, Winco also filed an Answer to Plaintiff's Motion to Correct Name of Defendant. In the Answer, Winco stated that GCI "has never been, nor is now, a partner with Winco Acquisition, Inc." Winco further argued that "Winco Acquisition, Inc. is an entirely separate and distinct legal entity from Greenway Center, Inc.," and that "the plaintiff's attempt to improperly *substitute or add Winco* to this case beyond the expiration of the statute of limitations would be highly prejudicial to Winco." An evidentiary hearing on the motion was held on September 17, 2002.

## IV.

On October 9, 2002, the state court, per Judge Peter J. O'Brien, Pennsylvania Court of Common Pleas, issued a decision and order granting Maione's motion to the extent of

---

[4] Baker was retained specifically to represent Winco's – not Essex's – interests. See Baker Dep. at 63 ("I thought that [Maione's motion] would be prejudicial to my then client, Winco"). This is confirmed by exhibit 12 to the Baker Deposition, which is a letter from Baker's firm to Essex confirming that it would "draft the intervention motion asking the court to allow *Winco Acquisition* to appear as a party of record."

amending the caption in the state court action to rename the defendant as "Greenway Center, Inc. as successor in interest to Winco Acquisitions, Inc." Because the crucial issue presented in the present appeal is the effect of this decision on the issue raised in this action – i.e., whether, under Pennsylvania law, GCI is a successor in interest to Winco and therefore responsible for its liabilities and entitled to rights under its insurance contract, Judge O'Brien's decision merits a detailed discussion.

In the "Findings of Fact" section of his opinion, Judge O'Brien stated that the facility to which Willet was admitted was, "both prior to the admission of Plaintiff's decedent and through the current date . . . identified and operated as 'Greenway Center.'" He further found that, in the fall of 1998, Winco submitted a Debtor's Plan of Reorganization to the United States Bankruptcy Court for the Middle District of Pennsylvania. The opinion then quotes the following provision contained in the Plan, adding emphasis as below:

> Class 5 – Equity Security Holders. An Equity Security Holder is a party which has equity or an investment interest in the Debtor. With respect to the herein Chapter 11 case, the Equity Security Holders are the shareholders. This class is impaired, and shall surrender ownership in the debtor corporation upon confirmation. THIS PLAN WILL NOT VIOLATE THE ABSOLUTE PRIORITY RULE BECAUSE THE SHAREHOLDERS ARE NOT RETAINING

THEIR STOCK AND ALL STOCK SHALL BE VESTED IN GREENWAY CENTER, INC. See 11U.S.C. Section 1129(b).

Judge O'Brien also found that the attorney who had executed the Debtor's Plan of Reorganization on behalf of Winco had specifically represented to the Bankruptcy Court that all of the stock of Winco Acquisition, Inc. would be vested in Greenway Center, Inc." Apparently based upon the foregoing, Judge O'Brien concluded that "Greenway Center, Inc. was set up to assume the stock from Winco Acquisition, Inc. when the bankruptcy was closed, and to act as its successor in operating the facility in Henryville."

The "Discussion" portion of Judge O'Brien's decision consists, in pertinent part, of the following:

> In the case at bar, it is apparent that Greenway Center, Inc. is the successor in interest to Winco Acquisition, Inc. by virtue of the Reorganization Plan confirmed by the Bankruptcy Court. It is further evident that the initial process was served on the appropriate representative of either or both corporate entities and there is no prejudice to any party in allowing this action to continue. As the Supreme Court observed in Paulish v. Bakaitis, supra:
>> Since from the record it is clear that the same Bertocci business enterprise was involved throughout,

-10-

> there is here no substitution of
> parties, but the correction of the
> designation under which the right
> party was originally sued.

Therefore, we will allow the requested relief.

It is significant that Judge O'Brien's opinion contains no discussion of Pennsylvania "successor in interest" law. Indeed, the decision cites no legal authority whatsoever with respect to the liability of a successor corporation under Pennsylvania law. The decision does, however clearly hold that "Greenway Center, Inc. is the successor in interest to Winco Acquisition, Inc. by virtue of the Reorganization Plan confirmed by the Bankruptcy Court."

V.

In 2003, GCI filed the present declaratory judgment action in the Monroe County Court of Common Pleas seeking a declaration that, because GCI is named in the state court action as a "successor to Winco Acquisition, Inc.," Essex has an obligation to defend and indemnify it in Maione's state court wrongful death action. On May 26, 2004, Essex removed the action to the United States District Court for the Middle District of Pennsylvania. On April 19, 2005, a non-jury trial was held before Judge James M. Munley. Maione, as well as GCI and Essex, participated in the trial.

Two witnesses testified at trial: Wallace Slatinsky, former executive director of Greenway and a principal of GCI,

-11-

and Richard Dowling, a senior claims examiner at Essex. Slatinsky testified, in relevant part, that, while Winco's proposed bankruptcy plan called for all Winco stock to be vested in GCI, no such stock transfer ever took place. Slatinsky also testified that Winco remained in existence after the bankruptcy plan was confirmed,[5] and that Winco was not involved with Greenway Center or any other facility, after that time. Maione and GCI also introduced into evidence certain filings that HMA had submitted to the Bankruptcy Court on behalf of Winco. At the conclusion of the trial, counsel for all parties presented their closing arguments. GCI and Maione both argued that the doctrine of issue preclusion applies to bar the court from considering, on the merits, whether GCI is a successor in interest to Winco because that issue had already been determined by the state court. GCI and Maione also argued that, under substantive Pennsylvania law, GCI was a successor in interest to Winco. Essex disputed both of these claims.

The district court first scrutinized Judge O'Brien's opinion and determined that the state court had, in fact, already

---

[5] Slatinsky testified that a decision was made to continue Winco's corporate existence because Winco was party to many of the service contracts with surrounding counties and several insurance companies from which Greenway Center obtained business. HMA and GCI chose not to renegotiate the contracts to name HMA or GCI because doing so would have been "inconvenient."

decided the issue presented in this action – i.e., whether GCI is a successor in interest to Winco. The district court then applied the five-part test set forth in <u>Veltri v. New Kensington</u>, 601 A.2d 392 (Pa. Commw. Ct. 1991) to determine whether issue preclusion applies to that finding.[6]

---

[6]Under <u>Veltri</u>, issue preclusion applies only if:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

<u>Id.</u> at 395.

The fifth <u>Veltri</u> requirement is not found in Pennsylvania law as established by the Pennsylvania Supreme Court. <u>See</u> <u>Shaffer v. Smith</u>, 543 Pa. 526, 529, 673 A.2d 872, 874 (1996), and <u>infra</u>.

-13-

The district court found that, in the present case, each of the requirements under <u>Veltri</u> had been met. The district court began by finding that the first and second requirements had been satisfied – i.e., that the issue in the present action is identical to that decided by the state court and that the state court decision constitutes a "final judgment." Dist. Ct. Op. at 5. As to the third requirement, the district court found that Essex, by virtue of its retention of counsel on behalf of Winco, was in privity with a party to the state court action:

> [C]ounsel [hired by Essex] . . . filed a motion to intervene on behalf of Winco, which the state court eventually denied as moot as it found Greenway to be Winco's successor. Accordingly, Essex or Winco who was in privity with Essex *as its insured* was involved in the underlying action.

<u>Id.</u> (emphasis added).

The district court thus held that Winco was "involved in the underlying action" and that Essex was in privity with Winco as a result of the insurer-insured relationship that existed between them. Finally, the district court found that the fourth <u>Veltri</u> factor – that Essex had a full and fair opportunity to litigate the issue before the state court – had also been met:

> [Essex] filed a brief with regard to the motion to

amend the caption, and its counsel was present at the hearing. The state court judge provided him the opportunity to participate at the hearing, and an opportunity to submit law after the hearing. He was also provided the opportunity to object to exhibits, questions, and witnesses.

Id. at 6 (internal citations omitted).

The district court therefore found that it was "precluded from readdressing th[e] issue" of whether GCI is a successor in interest to Winco and held that, pursuant to the state court order, GCI *is* a successor in interest to Winco. As a result, on July 18, 2005, Judge Munley issued a Memorandum and Verdict in favor of GCI, finding that issue preclusion applied and that, pursuant to Judge O'Brien's state court ruling, Essex is therefore liable to defend and indemnify GCI in Maione's state court action. Because it found issue preclusion applicable, the district court did not make its own determination, on the merits, whether GCI is a successor in interest to Winco. This timely appeal followed.

## VI.

Essex argues before us that the requirements for applying issue preclusion in the present context have not been met. To determine whether Essex is barred by the doctrine of issue preclusion from disputing its liability to defend and indemnify GCI because of the state court order, we must look to the law of the adjudicating state, which is Pennsylvania. See O'Leary v.

-15-

Liberty Mutual Ins. Co., 923 F.2d 1062, 1064 (3d Cir. 1991); Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988). Under Pennsylvania law, issue preclusion applies only where the following four requirements are satisfied:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Shaffer v. Smith, 543 Pa. 526, 529, 673 A.2d 872, 874 (Pa. 1996); Safeguard Mut. Ins. Co. v. Williams, 463 Pa. 567, 574, 345 A.2d 664, 668 (Pa. 1975); see also Greenleaf v. Garlock, Inc., 174 F.3d 352, 357-358 (3d Cir. 1999); Dici v. Commonwealth of Pa., 91 F.3d 542, 548 (3d Cir. 1996). The party asserting issue preclusion, here appellees GCI and Maione, bear the burden of proving its applicability to the case at hand. Dici, 91 F.3d at 548.

Essex argues that none of the four Shaffer (Greenleaf) criteria is satisfied in this case. Essex's arguments with respect to the first two Shaffer requirements have little merit and we readily dispose of them.

With respect to the first <u>Shaffer</u> requirement – identity of the issues in the present and prior adjudications – Essex argues that the state court decision did not decide the *substantive question of law* presented in this action – i.e., whether, under Pennsylvania law, GCI is deemed a successor in interest to Winco. Essex asserts that the state court ruling was merely *procedural*: it allowed an amendment to the case caption but did not determine any substantive rights or obligations of the parties. That this is so, argues Essex, is evident from the Discussion section of the state court decision, which does not address or cite any legal authority relating to Pennsylvania successor in interest law.

Essex's arguments is directly contradicted by the language of the state court decision. The state court, whether right or wrong, clearly held – as a matter of substantive law – that GCI was a successor in interest to Winco: "*Greenway Center, Inc. is the successor in interest to Winco Acquisition, Inc.* by virtue of the Reorganization Plan confirmed by the Bankruptcy Court." It is true that the state court opinion lacks a detailed discussion of successor in interest law. However, the state court did provide some reasoning for its holding by citing Winco's proposed bankruptcy plan, which provided that, upon confirmation, all Winco stock was to be vested in GCI.

Essex also argues that Judge O'Brien's state court decision is not a "final judgment" for the purposes of applying the doctrine of issue preclusion. In <u>Shaffer</u>, the Pennsylvania

Supreme Court looked to section 13 of the Restatement (Second) of Judgments to define "final judgment" in the "issue preclusion" context:

> [F]or purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect.

Shaffer, 673 A.2d at 875 (quoting Restatement (Second) of Judgments § 13 (1982)).

We do not agree with Essex's argument that the state court opinion is not a "final judgment." There is nothing "tentative" or non-final about Judge O'Brien's decision. See Greenleaf, 174 F.3d at 358 (quoting Restatement (Second) of Judgments § 13 comment g (1982)). Nor is there anything to suggest that the state court decision, which was reached upon written submissions by all parties and an evidentiary hearing, was not adequately deliberate and firm. Id. We therefore conclude that the state court decision was a "final judgment" for issue preclusion purposes.

We now turn to the third and fourth Shaffer requirements – i.e., that the party against whom "issue preclusion" is asserted was a party, or in privity with a party, in the prior adjudication, and that it had a full and fair opportunity to litigate the issue in

-18-

question. Here our analysis leads to a far different result than that reached by the district court.

## VII.

### *Was Essex a Party, or in Privity with a Party, to the State Court Action?*

It is undisputed that Essex was not a party to the state court action presided over by Judge O'Brien. The parties in that action were Maione and GCI. The question that arises now, therefore, is whether Essex was "*in privity with* a party to the prior adjudication." Shaffer, 673 A.2d at 874 (emphasis added).

The district court concluded that, because Winco filed a Petition to Intervene in opposition to Maione's motion to amend the caption, Winco was "involved in the underlying action," Dist. Ct. Op. at 5, and that therefore Essex, as Winco's insurer, was in privity with a party – i.e., Winco, in the state court action. However, the record reveals that Winco never was, in fact, a party to the state court action. More importantly, even if Winco had been a party, Essex could not, and would not, be deemed in privity with Winco, despite their insurer-insured relationship, since Winco and Essex had conflicting interests in the outcome of Maione's motion. See Vaksman v. Zurich General Accident & Liability Insurance Co., 172 Pa. Super. 588, 94 A.2d 186 (1953); Ranger Ins. Co. v. General Acci. Fire & Life Assurance Corp., 800 F.2d 329 (3d Cir. 1986). Hence, we disagree with the district court's conclusion that Essex was in

-19-

privity with a party to the prior adjudication.  <u>Shaffer</u>, 673 A.2d at 874.

The district court, without discussion or analysis, stated that Winco was "involved in the underlying action," apparently finding this sufficient to render it a party for "issue preclusion" purposes.  However, as we remarked above, it is clear that Winco was never a named party to the state court action.  We recognize that Winco filed a Petition to Intervene to oppose Maione's motion to amend.  However, Winco's Petition to Intervene was "dismissed as moot."  The unambiguous meaning of Judge O'Brien's ruling is that Winco was *not* permitted to interpose a response to Maione's motion to amend the caption.  That Winco's attorney may have had an opportunity to participate in the proceeding before Judge O'Brien *in order to oppose* Maione's motion, did not render it a party to the state court action for the purposes of issue preclusion.

More importantly, even if Winco could be considered a party to the state court action by virtue of its Petition to Intervene, no privity would exist between Essex and Winco, despite their relationship as insurer and insured, because, as demonstrated <u>infra</u>, they had conflicting interests in the outcome of Maione's motion to amend the caption.

Privity is defined as a "mutual or successive relationship to the same rights of property.  In its broadest sense, 'privity' is defined as mutual or successive relationships to the same right

-20-

of property, or such an identification of interest of one person with another as to represent the same legal right." Ammon v. McCloskey, 440 Pa. Super. 251, 261 (Pa. Super. Ct. 1995)(quoting Black's Law Dictionary (5th ed. 1979). To determine how this concept should be applied in the present context, we look to Pennsylvania law.

The Pennsylvania Supreme Court has held that, in general, for issue preclusion purposes, an insurer is in privity with its insured. See Dally v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 374 Pa. 476, 478-79, 97 A.2d 795 (1953). However, the Pennsylvania Superior Court has recognized an important exception to this rule: where the insurer's interests conflict with those of its insured, the insurer is not later barred by issue preclusion from presenting its own position.

In Vaksman v. Zurich General Accident & Liability Insurance Co., 172 Pa. Super. 588, 94 A.2d 186 (1953), the plaintiff, Vaksman, had a policy that covered injuries "caused by *accident.*" Id. at 187 (emphasis added). Vaksman was sued by a third party, Mousley, who claimed that Vaksman had *negligently* injured Mousley. The insurer, Zurich, refused to defend the action, contending that it was not liable under the policy because, Zurich alleged, Vaksman had *intentionally* – not *accidentally* – injured Mousley. Mousley then obtained a judgment against Vaksman, who turned around and sued Zurich to recover the monies it had paid to Mousley. When Zurich

pleaded as a defense that Vaksman had *intentionally* injured Mousley, Vaksman asserted that Zurich was barred by issue preclusion from so pleading by virtue of the earlier adjudication in which Vaksman was found to have injured Mousley negligently.

The Pennsylvania Superior Court held that, while insurers and insureds generally are in privity for purposes of issue preclusion, in the case before it such a finding would be erroneous because, in the prior adjudication, the interests of the insurer, Zurich, and its insured, Vaksman, conflicted on the point in issue – i.e., *intentional versus negligent action*. Id. at 188. Noting that in the prior adjudication it was in Zurich's interest that the Vaksman's action be characterized as "intentional" while it was in Vaksman's interest that it be characterized as "accidental," the court reasoned that it would be unfair to bind Zurich to the prior judgment when Zurich, by virtue of its duty to its insured, could not assert the position that was in its best interest in that action. Therefore, the court held that the insurance company, Zurich, was not in privity with its insured, Vaksman, and thus issue preclusion did not apply. Id. at 188-89.

This court applied the principle of Vaksman in Ranger Ins. Co. v. General Acci. Fire & Life Assurance Corp., 800 F.2d 329 (3d Cir. 1986). Ranger involved the following facts. An accident victim named Gaylor was seriously injured while riding in a van driven by a Delaware County employee. The County

-22-

had a comprehensive liability policy issued by Ranger. The County and Gaylor agreed upon a settlement. At a hearing to review the proposed settlement, the court considered a petition by a woman named Rossi, who sought to be declared Gaylor's common law wife, so as to qualify her for a share of the proposed settlement. Her petition was denied on the grounds that there was *no common law marriage* between Rossi and Gaylor, and the settlement, in which Rossi did not participate, was therefore approved. Ranger then filed an action for declaratory judgment against General Assurance Company, contending that under an insurance policy that General had issued to Rossi and that provided spousal benefits, General, and not Ranger, was liable for the damages sustained by Gaylor. Central to Ranger's claim was that there *had been* a common law marriage between Gaylor and Rossi.

We held that issue preclusion did not prevent Ranger from re-litigating the marital-status issue, despite the fact that Ranger's insured, the County, had been a party to the settlement hearing at which the state court expressly held that there was no common law marriage. Relying on <u>Vaksman</u>, we held that issue preclusion was not appropriate because, in the context of the settlement proceeding, Ranger's interest vis-a-vis the marital-status issue conflicted with the County's interest:

> The purpose of the proceeding was to seek court approval of a settlement proposed by the county and Gaylor, and it was in that proceeding that Rossi presented her marital petition. Because it

-23-

was in the county's interest that the court approve the proposed settlement and because the record makes clear that the court's granting of Rossi's petition would have jeopardized that settlement, it was in the county's interest that the court *reject* the petition. Yet, it clearly was in Ranger's interest that the court *grant* Rossi's petition. This was so because Rossi had taken out a policy with General that extended benefits to the insured's spouse and thus might have covered Gaylor if he were determined to be Rossi's spouse. And, if General's policy had covered Gaylor, General -- and not Ranger -- might have been liable to compensate Gaylor for the injuries for which he had sued Delaware County.

Ranger and Delaware County therefore had conflicting interests vis-a-vis the disposition of Rossi's marital-status petition. Thus we conclude that under Pennsylvania law Ranger and the county were *not in privity* with respect to the adjudication of the marital-status petition. The district court erred, therefore, in concluding that that prior adjudication collaterally estops Ranger from litigating the issue in its suit against General.

Id. at 332-33 (emphasis added).

Vaksman and Ranger control the outcome of the present case. Even assuming that Essex's insured, Winco, was a party to the underlying state action (and it is evident that Winco was

-24-

not), it is clear that *the interests of Essex and Winco conflicted with respect to Maione's motion to amend the caption.*  That motion sought to amend the caption to name as defendant *either* "Winco Acquisition, Inc. d/b/a Greenway Center" *or* "Greenway Center, Inc. as successor in interest to Winco Acquisition, Inc."

Winco had an interest in *opposing* the first of these alternatives – i.e., "Winco Acquisition, Inc. d/b/a Greenway Center" because if the caption were thus amended, it would make Winco subject to liability as the defendant in the case. However, Winco had, at best, *no interest* at all in whether the caption was changed to "Greenway Center, Inc. as successor in interest to Winco Acquisition, Inc" inasmuch as such an amendment would have no bearing on Winco's liability.  In such a case, Essex would be obligated to defend and indemnify Winco's successor in interest, GCI.[7]

Essex, on the other hand, had a strong interest in opposing *both* of the proposed amendments, for Essex would be

---

[7] We reject Essex's argument that, even if GCI is found to be a successor in interest to Winco, the no assignment clause in the insurance policy it issued to Winco prevents the transfer of rights under the policy from Winco to GCI.  See Northern Ins. Co. v. Allied Mut. Ins. Co., 955 F.2d 1353, 1358 (9th Cir. 1992) (holding that rights under an insurance contract issued to a predecessor corporation are transferred to the corporate successor despite the existence of a "no assignment" clause in the insurance contract).

liable to defend and indemnify Winco or its successor regardless of whether Winco itself was the named defendant or whether GCI was determined to be Winco's successor in interest for the purpose of assuming Winco's liabilities. Thus, even assuming that Winco was a party to the underlying state action, <u>Vaksman</u> and <u>Ranger</u> establish that Essex was not in privity with Winco for the purpose of applying issue preclusion.

In her brief, Maione also argues that Essex was in privity with GCI in the underlying state court action. Maione argues that "Essex had a mutual and contractual interest with GCI in the state court action to the extent that it assigned the counsel who entered his appearance and participated in the state court action." We reject this argument. It is true that Essex mistakenly retained counsel on behalf of GCI in 1999 before it became aware that GCI and Winco were distinct entities. But counsel initially retained by Essex to represent GCI withdrew his appearance on behalf of GCI *more than two years before Maione even filed her motion to amend.* When Maione filed her motion to amend, Essex retained counsel solely to protect Winco's interests. <u>See</u> <u>supra</u> note 4.

We therefore hold that, because Essex was not a party, nor in privity with GCI or any other party, to the underlying state court action, the doctrine of issue preclusion does not

apply.[8]  In this respect, the district court erred.

---

[8] Maione and GCI also argue that the doctrine of judicial estoppel should bar Essex from denying coverage to GCI. Maione and GCI argue that, because Essex initially retained counsel to represent GCI, it is now estopped from denying GCI rights under the policy Essex issued to *Winco*.  This argument has no merit.  As stated in text, Essex retained counsel for GCI only because it was unclear whether that entity was insured under its policy.  Immediately upon discovering that GCI was not its insured, Essex withdrew from the defense of GCI and issued a letter to GCI denying coverage.  It is undisputed that GCI is not the named insured on the policy Essex issued to Winco.

The doctrine of judicial estoppel applies only if (1) the party against whom it is sought has taken a position inconsistent with a position previously taken; and (2) the party took "either or both of the inconsistent positions in bad faith– i.e., "with intent to play fast and loose" with the court.  Klein v. Stahl GMBH & Co., 185 F.3d 98, 111 (3d Cir. 1999).  Here, there is no evidence that Essex acted in bad faith; to the contrary, it properly undertook a defense of GCI until it had enough information to determine that GCI was not its insured and therefore not entitled to coverage.  Accordingly, judicial estoppel is inapplicable.

## VIII.

### *Did Essex Have a "Full and Fair" Opportunity to Litigate the Issue of GCI's Successorship to Winco?*

It is axiomatic that, because Essex was not a party, or in privity with a party, to the underlying state court action, it also did not have a full and fair opportunity to litigate the issue whether GCI was a successor in interest to Winco. Both Maione and GCI argue, and the district court found, that Frank Baker, the attorney Essex retained to intervene in the state court proceedings on behalf of Winco, had the opportunity to participate in the hearing on Maione's motion to amend, object to exhibits and questions, and give testimony. Whether or not this is true, it is entirely beside the point: *Baker was retained to represent the interests of Winco* and, as we have discussed, Winco's interests were far different from those of Essex. As a result, at no time during any of the proceedings did Essex have an opportunity to present its own position that GCI was not a successor in interest to Winco.

## IX.

Because the district court found issue preclusion applicable, it did not reach the merits of the issue whether GCI is, under substantive Pennsylvania law, a successor in interest to Winco for the purposes of assuming Winco's liabilities and obtaining rights under its insurance contract with Essex. We will therefore vacate the District Court's judgment in favor of

GCI and remand to the District Court to make an independent determination of this issue on the merits. In so doing, the district court may, of course, take any additional evidence or hold such further hearings as it deems necessary.