

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2009

# Toll Bros Inc v. Century Surety Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1985

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Toll Bros Inc v. Century Surety Co" (2009). *2009 Decisions.* Paper 1702.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1702

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-1985

———

TOLL BROTHERS, INC.,

<u>Appellant</u>

v.

CENTURY SURETY CO., et al.

———

On Appeal from the Judgment of the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 07-1296)
District Judge: Honorable Petrese B. Tucker

———

Argued February 3, 2009

Before: McKEE, STAPLETON, *Circuit Judges*, and IRENAS,[*] *Senior District Judge*.

(Filed: March 24, 2009 )

———

———

[*] Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

James A. Kozachek (Argued)
Flaster/Greenberg, P.C.
200 American Metro Boulevard, Suite 126
Trenton, NJ 08619
  Attorneys for Appellant

George T. McCool, Jr. (Argued)
Wright & O'Donnell, P.C.
15 East Ridge Pike, Suite 570
Conshohocken, PA 19428
  Attorneys for Appellees

———

OPINION

———

IRENAS, *Senior United States District Judge*.

Appellant Toll Brothers, Inc. ("Toll") appeals the district court's grant of summary judgment in favor Appellee Essex Insurance Company ("Essex") on Toll's claims that Essex breached an insurance contract by failing to defend or indemnify Toll from a series of claims for damages. *See Toll Bros., Inc. v. Century Sur. Co.*, No. 07-1296, 2008 WL 638232 (E.D. Pa. Mar. 6, 2008). For the reasons that follow, we will reverse the grant of summary judgment and remand this matter for further proceedings.[1]

**I.**

Toll is a homebuilder whose operations have included new home construction in Philadelphia-area communities. (Toll Br. 5.) In April, 1999, Toll subcontracted with H.A.S. Protection, Inc. ("H.A.S.") to install fire suppression systems in homes under

---

[1] The district court had subject matter jurisdiction under 28 U.S.C. § 1332. Our appellate jurisdiction is authorized by 28 U.S.C. § 1291.

construction. (Id.) By contract, H.A.S. was obligated to indemnify and defend Toll from any claims relating to H.A.S.'s performance. (App. 34.) To ensure H.A.S. had the means to satisfy its obligations, H.A.S. was required to obtain a $1,000,000 general liability insurance policy and name Toll as an additional insured on that policy. (Id.) H.A.S. agreed to procure the general liability insurance policy before beginning any work under its contract with Toll. (Id.) H.A.S. obtained the necessary general liability coverage from Essex for the period spanning from June 26, 2003, to June 26, 2005.[2] (*See* App. 63, 65.)

In June, 2003, homeowners began informing Toll that their fire suppression systems were malfunctioning and causing damage. (Toll Br. 6.) The homeowners sought coverage under their warranties as well as reimbursement. (Id.)

Various lawsuits ensued. First, homeowners filed suits in Pennsylvania state court

---

[2] According to Essex, Toll was covered as an additional insured only for the period from October 30, 2003, to June 26, 2004. (Essex Br. 4.) Toll does not admit any such time limitation and generally asserts that it was an additional insured under the policies issued by Essex to H.A.S.; as noted above, those policies covered the period from June 26, 2003, to June 26, 2005. (Toll Br. 6.) In the proceedings below, one of Essex's arguments in favor of summary judgment was that the claims for damages against Toll pertained to events which did not occur during the period when the Essex insurance policy was in force. (App. 605-06 (Essex Dist. Ct. Br. 3-4.)) The district court did not reach this issue in its opinion, nor does this Court. *See Toll Bros., Inc. v. Century Sur. Co.*, No. 07-1296, 2008 WL 638232, at *3 n.4 (E.D. Pa. Mar. 6, 2008).

Transportation Insurance Company ("Transportation") provided the required general liability coverage to H.A.S. for the period of October 29, 1998, to October 29, 1999. (App. 53.) Century Surety Company ("Century") provided the coverage for the period of June 8, 2001, to July 25, 2003. (App. 55-61.) Transportation and Century were named by Toll as defendants in this matter but are not parties to the current appeal.

3

naming Toll and H.A.S. as defendants.[3]  (Toll Br. 6.)  Those actions alleged that

malfunctioning fire suppression equipment caused property damage.  (Id.; *see* App. 887-

905, 913-24, 928-38.)  Toll, as an additional insured, demanded that Essex defend and

indemnify Toll in the state court actions, but Essex refused to do so.  (Toll Br. 6-7.)

Second, Essex initiated a declaratory judgment action against H.A.S. before Judge

Petrese B. Tucker in the United States District Court for the Eastern District of

Pennsylvania.  *Essex Ins. Co. v. H.A.S. Prot., Inc.*, No. 06-5076 (E.D. Pa. filed Nov. 16,

2006).  Essex alleged that H.A.S. applied for insurance coverage knowing that it was

facing significant legal exposure stemming from H.A.S.'s installation of defective

"Senju"-brand sprinkler heads, but failed to disclose that potential liability in its insurance

application.  (App. 154, 156-59.)  Essex sought the rescission and nullification of its

insurance contract with H.A.S., as well as a declaration that Essex had no duty to defend

or indemnify H.A.S. against any claim involving defective sprinkler heads.  (App. 168-

69.)  H.A.S. never entered an appearance in the district court case.  (App. 336-37.)  On

May 7, 2007, the district court granted Essex's unopposed motion for summary judgment.

(App. 337, 585-86.)  Judge Tucker awarded rescission of the insurance contract and all

---

[3] Toll identifies three cases as relevant to the instant case: (1) *Ort v. Harvel Plastics, Inc.*, No. 05-05604 (Court of Common Pleas, Chester County, Pa.); (2) *Hoffman v. Toll Bros., Inc.*, No. 06-05899 (Court of Common Pleas, Chester County, Pa.); and (3) *Schwaninger, Jr. v. Toll Bros., Inc.*, No. 06-05900 (Court of Common Pleas, Chester County, Pa.).  (Toll Br. 6.)

4

desired declaratory relief to Essex.[4]  (App. 585-86.)

Third, unaware of the pendency of the *Essex v. H.A.S. Protection* proceeding before Judge Tucker, Toll instituted this action against Essex and two other insurers in state court.  *Toll Bros., Inc. v. Century Sur. Co.*, No. 07-01458 (Court of Common Pleas, Chester County, Pa. filed Feb. 15, 2007).  Toll sought to compel Essex to defend and indemnify it from the pending state court actions by the plaintiff-homeowners.

The case was removed to the Eastern District of Pennsylvania and assigned to Judge Tucker.  Essex moved for summary judgment, which was granted for two reasons. *Toll Bros., Inc.*, 2008 WL 638232, at *1, *3.  First, Judge Tucker held that the decision in *Essex v. H.A.S. Protection* had claim preclusive effect on the instant case.  *Id.* at *3-*4. Second, the court determined that Toll had no rights as an additional insured under the Essex insurance policy that survived the termination of the policy as to the named insured, H.A.S.  *Id.* at *4.  This appeal followed.

## II.

This Court exercises plenary review of the district court's decision granting summary judgment, and applies the same test that was applicable below.  *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).  Under Rule 56(c), "summary

---

[4] Toll filed a Motion to Intervene in the district court action between Essex and H.A.S. (App. 337, 587-88.)  Judge Tucker dismissed Toll's Motion to Intervene as moot because summary judgment had already been entered in favor of Essex and the matter had been closed.  (App. 337, 598.)

judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Startzell v. City of Phila.*, 533 F.3d 183, 192 (3d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 128 S.Ct. 2161, 2171 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-508 (2001)). In general, "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor*, 128 S.Ct. at 2171 n.4 (citing *Semtek*, 531 U.S. at 508).[5] Federal reliance on state law yields in diversity cases "in situations in which the state law is incompatible with federal interests." *Semtek*, 531 U.S. at 509.

Here, the rendering court was a federal court sitting in Pennsylvania and exercising diversity jurisdiction. Application of Pennsylvania preclusion law to this case is not incompatible with federal interests. Thus, Pennsylvania preclusion law will dictate whether Toll's claims are barred.

**III.**

A.

The court below determined that the decision in *Essex v. H.A.S. Protection* was a

---

[5] The preclusive effect of a judgment in a federal-question case is governed by "'uniform federal rule[s]' of res judicata, which [the Supreme] Court has ultimate authority to determine and declare." *Taylor*, 128 S.Ct. at 2171 (quoting *Semtek*, 531 U.S. at 508) (first alteration in original).

final judgment, on the merits, involving Toll's privy, H.A.S. *Toll Bros., Inc.*, 2008 WL 638232, at \*4. According to Judge Tucker, Toll and H.A.S. were in privity because "as contractor-subcontractor and named insured-additional insured, the two shared a concurrent interest in coverage under the Essex insurance policy . . . ."[6] *Id.* at \*3 n.5. In addition, Judge Tucker held that the instant suit involved the same causes of action as the prior suit. *Id.* at \*4. Hence, the district court found that the grant of summary judgment in favor of Essex in the *Essex v. H.A.S. Protection* matter had claim preclusive effect upon the current proceeding. *Id.*

Under Pennsylvania law, "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). "For the doctrine of res judicata to prevail, Pennsylvania courts require that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to

---

[6] The court below viewed the question of privity as undisputed by Toll. However, this conclusion misapprehends Toll's position. In the portion of its brief discussing res judicata, Toll argued that the causes of action differed, hence it was unnecessary to consider the other elements of the claim preclusion standard. (App. 611-13 (Toll Dist. Ct. Br. 3-5.)) However, in the context of its issue preclusion argument, Toll argued that H.A.S. was not its privy. (App. 614-16 (Toll Dist. Ct. Br. 6-8.)) Toll also contended that the criteria to determine the presence or absence of privity are the same whether the issue is one of claim preclusion or issue preclusion. (App. 614 (Toll Dist. Ct. Br. 6.))

sue or be sued."[7] *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d

Cir. 2006) (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72, 74 (Pa. 1974)).

Although Pennsylvania requires an "identity of persons and parties" for claim

preclusion to apply, that concept includes a party's privies. *Id.* at 548 n.11 (citing

*Stevenson v. Silverman*, 208 A.2d 786, 788 (Pa. 1965)). In recent years, Pennsylvania

courts have favored the definition of privity articulated in Black's Law Dictionary: "'[i]n

its broadest sense, "privity" is defined as mutual or successive relationships to the same

right of property, or such an identification of interest of one person with another as to

represent the same legal right.'" *Ammon v. McCloskey*, 655 A.2d 549, 554 (Pa. Super.

1995) (quoting Black's Law Dictionary (5th ed. 1979)); *Bergdoll v. Commonwealth*, 858

A.2d 185, 197 n.4 (Pa. Commw. 2004).

In a related context, Pennsylvania law generally holds that an insurer is in privity

with its insured when applying issue preclusion principles. *Greenway Ctr., Inc. v. Essex

Ins. Co.*, 475 F.3d 139, 149 (3d Cir. 2007). However, *Greenway Center* also creates an

exception to that principle: there is no privity between an insurer and its insured when

their interests are in conflict. *Id.*

In *Greenway Center*, Winco Acquisitions, Inc. ("Winco") operated a substance

abuse detoxification center ("Center"). *Id.* at 142. In June, 1997, Winco filed for

---

[7] This opinion treats the term "res judicata" as synonymous with "claim preclusion." *See Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 n.10 (3d Cir. 2006).

bankruptcy. *Id.* Shortly thereafter, Mark Willet died while being treated at the Center. *Id.* At the time of Willet's death, Winco was covered by a general liability insurance policy issued by Essex Insurance Company, *id.* at 143, coincidentally, the appellee in the instant case. As a result of the bankruptcy process, an entity known as GCI began operating the Center in January, 2002. *Id.*

In June, 1999, Willet's estate initiated a wrongful death action against GCI in Pennsylvania state court, before Judge Peter O'Brien. *Id.* at 143-44. The estate did not name Winco as a defendant in that action, and the statute of limitations to assert a claim against Winco expired. *Id.* at 143. The estate then filed a motion seeking to amend the caption to include Winco. *Id.* Essex retained legal representation on behalf of Winco; that attorney filed a Motion to Intervene on behalf of Winco in order to oppose the estate's motion to amend. *Id.* at 144. Judge O'Brien determined that GCI was the "successor in interest" to Winco, and granted the estate's motion "to the extent of amending the caption in the state court action to rename the defendant as '[GCI] as successor in interest to Winco Acquisitions, Inc.'" *Id.* at 144-45. Winco's Motion to Intervene was dismissed as moot. *Id.* at 148.

GCI then initiated a state court declaratory judgment action, seeking a declaration that "because GCI is named in the state court action as a 'successor to Winco Acquisition[s], Inc.,' Essex has an obligation to defend and indemnify it in [the estate's] state court wrongful death action[,]" since Essex was Winco's insurer at the time of

9

Willet's death.  *Id.* at 145.  After the case was removed to federal court, it proceeded to a bench trial before Judge James Munley.  During the trial, GCI argued that Judge O'Brien's finding that it was a successor in interest to Winco had issue preclusive effect upon the proceedings before Judge Munley.  *Id.* at 145-46.  Judge Munley agreed that issue preclusion applied because "Essex, by virtue of its retention of counsel on behalf of Winco, was in privity with a party to the state court action[.]" *Id.*

This Court reversed.  The panel noted that Winco was never a party to the state court litigation because its Motion to Intervene was dismissed.  *Id.* at 148.  The panel emphasized, however, that "even if Winco had been a party, Essex could not, and would not, be deemed in privity with Winco, despite their insurer-insured relationship, since Winco and Essex *had conflicting interests* in the outcome of [the motion to amend the caption]." *Id.*  (emphasis added).

As this Court explained, the estate's motion "sought to amend the caption to name as defendant *either* 'Winco Acquisition[s], Inc. d/b/a Greenway Center' *or* '[GCI] as successor in interest to Winco Acquisition[s], Inc.'" *Id.* at 150.  Winco only had an interest in opposing the first of those two alternatives, lest it be subjected to potential liability.  *Id.*  However, Winco had "at best, *no interest* at all in whether the caption was changed to '[GCI] as successor in interest to Winco Acquisition, Inc' inasmuch as such an amendment would have no bearing on Winco's liability." *Id.* at 150-51.

By contrast, Essex had a "strong interest in opposing *both* of the proposed

amendments, for Essex would be liable to defend and indemnify Winco or its successor regardless of whether Winco itself was the named defendant or whether GCI was determined to be Winco's successor in interest for the purpose of assuming Winco's liabilities." *Id.* at 151. Because Winco and Essex had differing interests, this Court declined to apply Pennsylvania's general rule that privity existed between an insurer and its insured. *Id.* at 149, 151; *cf. Radakovich v. Radakovich*, 846 A.2d 709, 715 n.7 (Pa. Super. 2004) (finding no privity between a father and his son in light of their conflicting interests as to ownership of a brokerage account).

The rationale of *Greenway Center* applies persuasively to the instant case. By its default in *Essex v. H.A.S. Protection* H.A.S. was clearly indifferent to a decision rescinding its Essex insurance policy.[8] Toll, however, had a strong interest in opposing the rescission of the Essex insurance policy. Toll is a viable entity whose resources are threatened by verdicts in favor of the plaintiff-homeowners, particularly if it is not insured against such losses by Essex. Toll anticipated the possibility of liability arising from H.A.S.'s performance as a subcontractor, specifically requiring H.A.S. to obtain general liability coverage to protect Toll's interests.

We hold that there was no privity between H.A.S. and Toll for purposes of determining the preclusive effect vis a vis Toll of Essex's default summary judgment

---

[8] The record does not make clear whether H.A.S. was a going concern when *Essex v. H.A.S. Protection* was decided. According to Toll, Essex knew that H.A.S. was defunct when Essex commenced the declaratory judgment action against H.A.S. (Toll Br. 21.)

against H.A.S. In the absence of such privity, the "persons and parties" to *Essex v. H.A.S. Protection* differ from those in the instant case. Hence, we will reverse the district court's holding that the doctrine of claim preclusion bars Toll's current action against Essex.[9]

Our decision is in accord with the approach recommended by the Restatement (Second) of Judgments ("Restatement"), an authority that Pennsylvania courts have relied upon when resolving preclusion issues. *Turner*, 449 F.3d at 550 (citing *McArdle v. Tronetti*, 627 A.2d 1219, 1223 (Pa. Super. 1993)) ("[W]e are acting consistently with the approach of the Pennsylvania courts in adhering to the Restatement (Second) of Judgments in analyzing res judicata issues."). Pursuant to section 56 of the Restatement, "[a] judgment for or against the promisee in an action between him and the promisor does not preclude an action by the beneficiary on the obligation to him unless at the time the judgment was rendered the promisee had power to discharge the obligation." Restatement (Second) of Judgments § 56(1) (1982). A promisee's power to discharge an obligation otherwise due to a beneficiary terminates when "the beneficiary changes his position in reliance on the promise, assents to it, or brings an action on it." Restatement

---

[9] Essex dedicates a significant portion of its response brief to refuting the notion that Toll was a necessary or indispensable party to the *Essex v. H.A.S. Protection* proceeding. Essex also argues that Toll had ample opportunities to join that case as an intervenor, but failed to do so in a timely fashion. These points do little to inform our resolution of the dispositive question–namely, whether Toll was a party to *Essex v. H.A.S. Protection*, or in privity with a party to that action. There is no dispute that Toll was not a party to the action; its motion to intervene was denied as moot. Nor is there a question as to what entities were parties–only Essex and H.A.S. And finally, for the reasons stated above, Toll was not in privity with H.A.S.

12

(Second) of Judgments § 56, cmt. a (citing Restatement (Second) of Contracts §§ 305, 311(3)).

Here, H.A.S. entered into an insurance agreement with Essex for the benefit of Toll. The contract between Toll and H.A.S. expressly required H.A.S. to procure such a policy, and forbid H.A.S. from beginning work until the policy was in place. Toll relied upon the protection afforded by the Essex insurance policy when it permitted H.A.S. to install fire suppression systems in homes under construction. Therefore, H.A.S. had no power to terminate Essex's obligation in favor of Toll by the time *Essex v. H.A.S. Protection* was decided. As a result, the Restatement would allow Toll to proceed with an action against Essex on the obligation allegedly due under the insurance contract. We will do the same.

B.

Our reversal on the claim preclusive effect of *Essex v. H.A.S. Protection* will permit Toll to contest whether H.A.S. in fact perpetrated a fraud entitling Essex to void its H.A.S. policy. Judge Tucker also determined below that since in her view the Essex policy was void; "there exists no coverage for the additional insured, Toll Bros., pursuant to the terms of the Additional Insured Endorsement." *Toll Bros., Inc.*, 2008 WL 638232, at *4. Toll, however, made several arguments below that the policy might permit coverage for an additional insured notwithstanding a rescission of H.A.S.'s coverage. As those arguments were never considered by Judge Tucker, we likewise reverse the grant of

13

summary judgment on this issue.

## IV.

For the reasons set forth above, the district court's judgment in favor of Essex will be reversed and the case remanded for further proceedings consistent with this opinion.